THE PEOPLE ex rel. THE ATTORNEY-GENERAL v. SCAN-NELL.

An information in the nature of a *quo warranto*, is the proper proceeding to try the title to an office.

In a proceeding against an officer *de facto*, to compel him to deliver the books and papers of his office to a party claiming the office, the plaintiff must show *prima facie*—first, that a vacancy existed, and second, that he is entitled to fill it.

Where the law requires an officer to file a new bond within two days after the meeting of the supervisors, the officer has the whole of the two days succeeding the day of meeting, to execute and present his bond.

Where the board of examiners, authorized to approve the new bonds required by law of the officers then in office, refuse to act, an officer already in office, is not compelled to sue out a *mandamus* to compel such action; and he may set up such failure to act, in defending his right to the office.

The refusal to act by a board of officers, when required by law to act, is not the exercise of a discretion, and is conclusive upon no one. The failure to approve of an official bond is not the fault of the officer—it does not release his sureties—nor can it work a forfeiture of his office.

The defendant being elected sheriff of the county of San Francisco, in September, 1855, on July 26, 1856, and after the Consolidation Act went into effect, one of the defendant's sureties applied to the County Judge to be released from further liability; on the sixth of August, the Judge declared the office vacant, by reason of the failure of defendant to file new bonds : *Held*, that the County Judge had no jurisdiction—the new law, then in force, vesting the power of approving the bonds of such officer, in the County Judge, auditor, and president of the board of supervisors.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

This was a proceeding in the District Court of the Twelfth Judicial District, under the provisions of the three hundred and tenth, and following sections, of the Practice Act, against the defendant, for unlawfully holding and exercising the office of sheriff, of the County and City of San Francisco. The information states substantially, that the defendant was elected sheriff of the County of San Francisco in September, 1855, took the oath of office, gave bonds, and duly entered upon the duties of the office ; that on the twenty-sixth day of July, 1856, Charles Cook, one of the sureties upon the official bond of defendant, presented his petition to the County Judge of that county, pray-

ing to be relieved of all future liability on the bond; that on the sixth day of August, 1856, the County Judge made an order declaring the office vacant, by reason of the failure of defendant to file a new bond, as required by the order of the Judge; that by the provisions of the fourteenth section of the Consolidation Act of April 19th, 1856, the defendant was required to execute a new bond within two days after the first meeting of the board of supervisors; that said board met on the ninth day of July, 1856; that defendant did not execute a new bond within the time limited, and that the board of supervisors, on the seventeenth day of July, declared the office vacant. The defendant answered, that he presented to the County Judge, on the sixth day of August, a new official bond, but the Judge arbitrarily, and without good and sufficient cause, rejected the sureties offered by defendant, and refused him further time to procure other sureties; that within the time required by the Consolidation Act, he proceeded to execute and deliver a new official bond with sufficient sureties, and presented the same for approval before the County Judge, auditor, and president of the board of supervisors, but, that said board of examiners arbitrarily, and without sufficient cause, refused to proceed with the justification of his sureties, or the approval of his bond, and did deny to the defendant his right to have his bond approved, by refusing to act thereon. To this answer there was a demurrer, and judgment thereon was given against the defendant, from which he appeals to this Court.

*McDougall, Aldrich, and Sharpe,* for Appellant.
No brief on file.

*J. B. Crockett* for Respondent.
We insist that the proceedings before the County Judge were in strict conformity with the statute of May 23, 1853. R. S., 772.

That the proceedings before the County Judge were judicial in their nature, and the order vacating the office is a judgment, and does not, therefore, come within the principle decided in Burgoyne *v.* The Supervisors.

That the constitutional authority of the County Judge is not confined to the special cases, over which the County Court has jurisdiction, under section nine, article six, of the Constitution. Under the next preceding section, he exercises general jurisdiction in criminal cases, as Judge of the Court of Sessions, and " shall also perform such other duties as shall be required by law." It is evident, therefore, that the Constitution does not limit his jurisdiction to the " special cases " mentioned in the next section, but distinctly authorizes the Legislature to require other additional duties of him.

But the proceedings against Scannell do come fairly within the meaning of the term, "special cases," which are defined by the Supreme Court, to be "such new cases as are the creation of statutes, and the proceedings under which are unknown to the general framework of Courts of Common Law and Equity." Parsons v. Tuolumne Water Co., Jan. Term, 1855, p. 5.

The proceedings by which a surety on an official bond may compel his principal to give a new bond, on pain of removal from office, is entirely a statutory proceeding, unknown at common law, and is, therefore, a special case, within the foregoing definition.

The County Courts, as Courts, under the Constitution, do not of necessity have jurisdiction in all "special cases." The language of the Constitution is, that the County Court shall have jurisdiction in such special cases as the Legislature may prescribe." In this case, the Legislature has conferred upon the Judge of the County Court, jurisdiction of the subject-matter. This is substantially conferring it upon the Court, the Judge being the sole Judge of that Court. But if it be otherwise, there is nothing to prohibit the Legislature from conferring such authority upon the Judge, who is a judicial officer, with certain prescribed duties, and who "shall perform such other duties as shall be prescribed by law." To hear and decide such applications from sureties, for relief, is one of those "other duties" "required by law," and it is a duty which the Constitution and laws do not impose upon any other tribunal or officer.

That the three justices of the peace who performed the duties of supervisors, were officers de facto, because,

First, They actually performed the duties of the office, and the public acquiesced in it.

Second, They entered the office with a color of title, and were not mere usurpers.

Wilcox v. Smith, 5 Wend., 231; McKim v. Somers, 1 Penn. R., 297; Burke v. Elliot, 5 Ired., 355; Plymouth v. Painter, 17 Conn. R., 585.

That being officers de facto, their acts were valid as to third persons and the public, and the right to exercise the office, or the validity of their acts, cannot be inquired into in a collateral proceed ng. McInstry v. Tanner, 9 Johns., 135; People v. Collins, 7 ib., 549; Burke v. Elliot, 4 Ired., 355, 368; Gilliam v. Reddick, 3 Scam., 483; McKim v. Somers, 1 Penn. R., 297; Plymouth v. Painter, 17 Conn. R., 585; Hoagland v. Calvert, 1 Spencer, 387; Farmers, etc., v. Chester, 6 Humph., 458; Smith v. State, 19 Conn. R., 483, 489; Aulanier v. Governor, 1 Texas, 653; Taylor v. Skrine, 3 Brev., 516.

That the Legislature had the right to cause Scannell to renew his bond before the supervisors, in the manner and within the

People *v.* Scannell.

time required, on pain of removal from office; and having failed to comply with the law, his office was properly declared vacant.

The action of the County Judge, and of the board of supervisors, in declaring the office vacant, is conclusive, and cannot be inquired into in a collateral proceeding; this point is conclusively settled, and all the authorities upon it are reviewed at length in People *v.* Collins, 10 Wend., 56.

This is a collateral proceeding, and is not in any proper legal sense, a direct proceeding. A *mandamus*, directed to the supervisors, or County Judge, to compel them to act upon Scannell's application to renew his bond, or any other process addressed to and intended to coerce the supervisors, or County Judge, would have been a direct proceeding. No such steps were taken, and the action of the supervisors, or County Judge, are, therefore, conclusive, and cannot be impeached in this action.

If the board of supervisors had the constitutional power to approve official bonds, then their action is conclusive, and Scannell is manifestly out of office, under the Consolidation Act; but if the supervisors had not such power, then the power remained with the County Judge, and Scannell is out of office, under the proceedings before Judge Freelon. Both having declared the office vacant, and the power to do so being plainly in one or the other, and the judgment of each being conclusive, until reversed or set aside, Scannell is out of office by virtue of one or the other of the said proceedings.

BURNETT, J., after stating the facts, delivered the opinion of the Court—MURRAY, C. J., concurring.

The first question arising upon the record, regards the validity of the proceedings before the County Judge. These proceedings were had under the act of May, 18, 1853, Comp. L., 772. The first section requires " any Court, Judge, board, officer, or person, whose duty it is to approve the official bond of any officer," to issue, under certain circumstances, shown to exist by the affidavit of a credible witness, a citation to such officer to appear and show cause why his office should not be vacated; and if the officer fail to show good cause, or fail to give ample additional security, an order shall be made, declaring the office vacant. By the subsequent sections of the act, proceedings may be had against the officer by " every surety on the official bond," before " the Court, Judge, board, officer, person or persons, authorized by law to approve such official bond ; " and, " unless such officer shall have given good and ample surety," his office shall be declared vacant ; and in case the officer either gives or fails to give the new bond, the surety is released from all future liability upon the former bond.

The bond on which Cook was surety, was approved by the County Judge, according to the law then existing. But, before

these proceedings were commenced, the Consolidation Act went into effect, on the first of July, 1856; and by the provisions of the fourteenth section of that act, the bonds and sureties of all officers of the city and county of San Francisco, must be approved by the County Judge, auditor, and president of the board of supervisors. The defendant insists that the County Judge had no jurisdiction, and, therefore, the proceedings before him, upon the petition of Cook, were void, the Consolidation Act having taken from the County Judge the power to approve official bonds, and vested it in a board of officers, of which he was only one of the members.

This position would seem to be correct. The phrase "persons authorized by law to approve such official bond," does not refer to the person who did in fact approve the particular bond, but it refers to the board or person *then* authorized to approve "such official bond;" that is, a board of that character. If it had been the intention of the act to confine the jurisdiction of such cases to the *same* officer who approved the particular bond, then it would not have used language in the present tense, "persons authorized to approve," but would have said "persons who approved such bond." The different provisions of the statute, when taken together, clearly sustain this view. The surety must proceed before the person or board, who would be authorized to approve the "new bond," in case the officer should execute one. The new bond, in this case, could only be approved by the County Judge, auditor, and president of the board of supervisors. The bonds of all officers of the city and county of San Francisco could only be approved by them; and Scannell was, after the taking effect of the Consolidation Act, by its own terms, strictly an officer of that city and county. *As such*, any official bond executed by him must be approved by the board of examiners, if I may properly so call them. The new sureties given by him in such case, must possess the qualifications required by the fourteenth section. The bond to be given by him, upon the petition of Cook, was a *new bond*, to operate in future, and must come under the provisions of the Consolidation Act as to its approval, and the qualifications of the sureties.

If these views be correct, then the proceedings before the County Judge were void for want of jurisdiction, and the order made by him did not discharge Cook, and did not affect the rights of the defendant in any manner whatever.

The next question regards the effect of the refusal of the board of examiners to act, and the resolution of the board of supervisors, declaring the office vacant; and, for the purposes of this question, the answer must be taken as true.

The learned counsel for the people insists, that the action of the board of supervisors, in declaring the office vacant, is conclusive upon the defendant, and cannot be questioned by him,

in a *collateral* proceeding, and then contend that this is such a proceeding. In support of this ground, they refer to the case of The People *v.* Collins, 19 Wend., 56. This case was a leading one, and seems to have been very fully considered. The general doctrine laid down in that case, is well expressed by the reporter, in these words:

" When the discharge of a duty, created by act of the Legislature, is confided to a special commission, and the duty is in its nature judicial, this Court will not collaterally revise the doings of the commissioners, and hold as void the final determination made by them, in the exercise of their discretion, or judgment."

The correctness of this general principle must be conceded, and it was correctly applied to the facts of that particular case. It appears that certain commissioners had been appointed, by act of the Legislature, to lay out a public highway, on the most *direct* and *eligible* route, from one given point to another, commencing at or *near* the first, and terminating at or *near* the second point mentioned. The route adopted by the commissioners was " strikingly injudicious," and the town commissioners, whose duty it was to open the road, therefore refused to do so, and a rule for a peremptory *mandamus* was granted, to compel them to do their duty. In delivering the opinion of the Court, Mr. Justice Cowen reviews several leading cases, English and American, most of them sustaining the view taken by him. In the case of Griffin *v.* House, 18 John., 397, the company was authorized to erect their easternmost gate *near* a certain point. They first erected it within one and three-fourths miles, then changed it to a point within one mile, and at last located it at a point two and three-fourths miles from the place 'designated. The toll-gatherer was sued for collecting toll at this latter point. The action was sustained upon two grounds: First, the gate was not *near* the point designated; Second, the company had exhausted its discretion in the first location. The Court said: " In the case of The People *v.* Drenslaw, 1 Caines,˜177, this Court decided that a gate placed at the distance of eight chains and fifteen links from the house of John Van Horson, was a legal exercise of the power granted by the act, requiring the gate to be near his house; but there must be some limit to the discretion given, and we are clearly of opinion that, considering the extent of the road, a gate two and three-fourths miles from the Massachusetts line, is not placed *near* that line."

These two cases lay down the rule that in an extreme case, the acts of a special board, tribunal, or commission, even, in a case where discretion is given, will be disregarded in a collateral proceeding.

The same learned Judge refers to the case of Rix *v.* Hervey, 1 Black. R., 20, to show " a distinction between a direction of a

mere ministerial officer, and when he is to judge." He also refers to the cases of Henderson v. Brown, 1 Caines, 92 ; Easton v. Calendar, 11 Wend., 95 ; Britton v. Kinnaird, 4 Moore, 50 ; and Betts v. Bagley, 12 Pick., 572 ; as authorities sanctioning the opinion he delivered.

Without undertaking to say that there could be no exception to the rule, as laid down by Justice Cowen, it becomes proper and necessary to inquire how far the principle stated is applicable to the circumstances of this particular case. The same learned Judge, in commenting upon the case of Henderson v. Brown, says :

" But this is very different from the case in which they were not to exercise any judgment at all over the subject. The grievance is a mere error, or mistake, by them, while in the exercise of a lawful jurisdiction. So, in the case at the bar, the relators were bound to exercise judgment over the questions of nearness and eligibility."

It becomes, then, important to ascertain what amount of discretion, if any, was vested in the board of supervisors by the fourteenth section of the Consolidation Act. This board was simply required to "declare the office vacant" in case of default on the part of defendant to execute a new bond conformable to the laws "theretofore existing." It was the duty of the board of examiners to approve or disapprove the bond, and in discharging this duty they had necessarily to pass upon the form of the bond, and the character and sufficiency of the sureties. If the bond was approved, it was required to be deposited with the county auditor, one of the board of examiners. This board had a discretion, and could only approve or disapprove the bond after exercising their judgment. But the board of supervisors had no discretion. They could not declare the office vacant, because, in their opinion, the bond approved was not in due form, or the sureties insufficient, nor could they refuse to declare the office vacant, because, in their opinion, the other board had improperly refused to approve the bond. These were questions solely confided to the board of examiners, and upon the certificate of this board that the defendant had made default in executing a new bond as required, the board of supervisors could do no more and no less, than declare the office vacant. They could make no inquiry into the correctness of the acts of the board of examiners—could not review their decision in any way—and had no discretion in the matter. The law had confided every matter of discretion with the board of examiners, and the action of the board of supervisors was entirely dependent upon the action of the other board. The supervisors could hear no evidence, try no issue, and admit of no defence by Scannell, the defendant. Therefore, as they had no discretion, the act of declaring the office vacant could not bind any one, as a final

judgment, who might contest it. By the amendatory act of February 8, 1855, Statutes of 1855, p. 6, and by the ninth section of the Consolidation Act, it was the duty of this board to appoint some one to fill the office until the next election. Before they could make this appointment, they had to declare that a vacancy existed. But this declaration was only the basis of their own action in making the appointment, and was simply an *ex parte* proceeding. Taking the provisions of the different statutes together, as constituting one entire system, and it would seem clear that the law does not intend there should be a continued vacancy in any office, and for that reason it gives certain inferior jurisdictions the right to make a prompt, summary, and *ex parte* declaration that the office is vacant, and at once to fill the vacancy by appointment, so that the question may be as speedily settled as possible, by proceedings in the nature of a *quo warranto*. This declaration of a vacancy is but a preparatory step to the appointment, and the appointment but preparatory to the proper proceeding to settle the question of title to the office by the proper tribunal. The object of the law is to have the office properly filled; and when an alleged vacancy is declared, and a new incumbent appointed, then there is an interested individual to see that proceedings are promptly instituted.

In the case of The People *v.* Stevens, 5 Hill, 629, Justice Bronson, referring to the case of Ex parte Heath, 3 Hill, 42, says:

"That case decides that a person, showing a *prima facie* right to an office, is entitled to have the proper oath administered to him, to the end that he may be in a condition to assert his legal rights."

In the case alluded to, a peremptory *mandamus* was granted to compel the mayor to administer the proper oath. If the board of supervisors should appoint a person to fill an alleged vacancy, when no vacancy had been first declared, and in a case like the present, I apprehend the person appointed would have not even a *prima facie* right to the office, and could not, in that character, contest the right of the officer *de facto*.

If these views be correct, the action of the board of supervisors did not affect the rights of defendant, as they had no discretion to decide any question of doubt.

The next question regards the effect of the refusal of the board of examiners to act upon the application of defendant to have his bond approved. He alleges that he presented a good and sufficient bond, with sufficient sureties, for their approval or disapproval, and they refused to do either the one or the other. As stated by him in his answer, it was not the irregular or improper exercise of an admitted discretion, but it was a refusal to act at all. Had the board of examiners disapproved the bond, and defendant had not taken prompt steps to review their decision, (conceding, for the sake of argument, that the law allowed

him to do so,) then their action would have been conclusive upon him, except, perhaps, in case of a very glaring abuse of their discretion. But as the action of a board, or officer, who has no discretion, is not conclusive, so the refusal to exercise a given discretion is not conclusive upon any one. It is only the exercise of such discretion that binds a party, and not the failure to exercise it. If the commissioners mentioned in the case from 19 Wend., 56, had laid out no road, although they had so certified, would any one have been bound by their alleged action ?

But it is insisted that the defendant should at once have sued out a *mandamus* to compel the board of examiners to act ; and as he did not do this, he is concluded.

There is, however, a very plain difference between the condition of a party claiming a right to enter upon the duties of an office, and that of a party already in office, and who is sought to be excluded upon the ground of a forfeiture. In the first case, the *onus* is on the claimant, and in the second, the *onus* is on the party who seeks to oust the incumbent. If defendant had been seeking to enter upon the duties of the office, and certain precedent steps must be taken by him, and certain obstacles in his way first removed, and without doing which he could.not assert his rights, as in the case from 3 Hill's R., it might be necessary for him to compel the officer, or board, to act, whose action was required to place him in the proper position to assert his rights. But when the party is already in office, and has done all the law requires him to do in order to retain the office, and the default is not with him, but with the officers of the State, I apprehend that there is no rule of law that would forfeit his right to the office, because he did not do more.

But even in cases where the party seeks to enter upon the duties of an office, and he is required to give a bond as a precedent condition, and he does execute and present a good bond with sufficient sureties, and the officer, or board, whose duty it is to approve or reject the same, neglects or refuses to act, it is not sufficient cause to defeat his rights.

In the case of The People v. Fitch, 1 Cal. R., 519, the relator, Casserly, had executed a good bond, and deposited the same in the proper office, but the Governor, whose duty it was to approve the same, had failed to act ; and yet the relator was decided to be entitled to the office. This was a very important case, and very elaborately discussed. In the case of The Auditor v. Woodruff, 2 Pike R., 73, it was held, in substance, as stated in the syllabus of the case, that " although the statute of Arkansas required the official bond of the State Treasurer to be approved by the Governor, and that approval to be endorsed thereon before the commission issues, or the person qualifies, or proceeds to discharge the duties of his office, yet the failure of the Governor to endorse such approval, or to approve the bond, neither creates

nor destroys, increases nor diminishes, the obligation of the contract, which, if in every other respect legally executed, is perfect." "But the failure of the Governor to approve the bond, neither discharges the officer nor his sureties." The same doctrine is held in the subsequent case of Taylor v. The Auditor, 2 Pike R., 174. These were suits brought upon official bonds, against the principal and sureties, and under the provisions of our statute, Comp. Laws, 98, section eleven, those defects were not, under the bond, void. If, then, the bond would be good as *against* the sureties, it would not be void as in favor of the officer. In other words, where the officer is not in default, but the default is with the officer or board whose duty it is to approve the bond, and in default of such action, the bond is yet held good to bind the officer and his sureties, it must be held sufficient to prevent a forfeiture of his office, until placed in the wrong by the affirmative act of the officer or board, in rejecting the bond.

In the case of The State v. Findley et al., 10 Ohio R., 51, it was held, that the oath of office was a mere ministerial act, and not a condition precedent to entering upon the duties of an office ; nor would the omission to take it by the principal in an official bond, discharge the sureties. And in the case of Van Dusen v. Haywood et al., 17 Wend., 67, it was held, that " a bond is not void merely because it does not, in all respects, conform to the statute under which it is taken ; it is *absolutely* void only when the statute *declares* it void." So in the case of Ring v. Gibbs, 26 Wend., 502, it was substantially held, that it is not permitted to the obligors of a bond to object because it contains *more* than the statute required. The same doctrine was held in the case of Spick v. The Commonwealth, 3 Watts & Serg., 324. So, in the case of Apthorp v. North, et al., 14 Mass. R., 166, it was decided, that " to the validity of a coroner's bond for the faithful performance of the duties of his office, a formal approbation of the Court of Common Pleas, on record, is not necessary." And in the case of Young v. The State of Maryland, 7 Gill & John., 253, it was decided, that the failure to attest a sheriff's bond, is no objection to its validity.

If, then, the failure to approve the bond by the proper agent of the State does not release the principal or his sureties, upon what principle of law or justice can it be said that such a failure shall work a forfeiture of the office, when the officer is not in default, but the wrong is on the part of the State ? Why should the bond be held good as *against* the innocent party, and not be good *for* him ? And why should the party in the wrong be protected, and the innocent party be held liable ? That defendant and his sureties are now, and at all times have been, liable upon this new bond, there would seem to be no doubt. Until disapproved, it is good as against the obligor and his sureties, and must be good for him. In the contemplation of the statute, the

bond is void when rejected. Then the sureties would be released, but not till then. "Undoubtedly, a party cannot take advantage of the non-performance of a condition, if such non-performance has been caused by himself." Strong, P. J., in delivering the opinion of the Court in the case of Smith *v.* Guguty, 4 Barb. S. C. Rep., 619. To the same effect is the case of The Mayor etc., *v.* Butler, 1 Barb. S. C. Rep., 325. "No party can insist upon a condition precedent, when its non-performance has been caused by himself." Syllabus of the case.

The last point we shall consider is, whether this proceeding is direct or collateral, with reference to the questions raised upon the record. The defendant's counsel insist that it is the appropriate and direct proceeding; while the counsel for the People insist that it is but collateral, and not direct. The learned counsel for the People have referred to the case of The People ex rel. Hodgkinson *v.* Stevens, 5 Hill's R., 616, to sustain certain positions taken by them in the case of Doane *v.* Scannell, decided at this term. The facts of that case are concisely stated by Justice Bronson :

"The relator makes out his title in this way : At a meeting of the common council in May last, an election for clerk was held, when eighteen votes were given, nine of which were for the relator, and nine for the respondent; and as the candidates had an equal number of votes, it was declared that no election had been made. But the relator insists that he was elected, and for the purpose of maintaining that position he alleges that Osborn, one of the eighteen persons who voted, was not in fact an alderman, and, therefore, had no right to vote. He further alleges that Osborn was one of the nine persons who voted for the respondent, and if that vote was void, then the defendant had but eight legal votes, and so the relator was elected clerk."

It will be perceived that the question as regarded the election of the relator, Hodgkinson, turned entirely upon the question whether Osborn was legally an alderman; and this question depended upon the fact whether Cross, who claimed the seat, was elected. Osborn had been a member of the preceding board, and unless Cross, or his competitor, had been elected to fill the place of Osborn, he, Osborn, continued to be an alderman. "On the question whether Cross was elected," says Justice Bronson, "the parties are at issue."

"The relator has several difficulties to encounter," continues Justice Bronson, "which I think insuperable. And in the first place, the defendant is actually in the office of clerk, under color of lawful right to hold it. A writ of *mandamus* is not the proper mode to try title. The relator should have proceeded by an information in the nature of a *quo warranto*." "The relator should first establish his title to the office by a direct proceeding

for that purpose, and then his right to the books and papers would follow, as a matter of course."

In that case it was clearly decided that an information in the nature of a *quo warranto* was the *direct* proceeding to try the title to an office, and to inquire into all the facts upon which the title rested. Had the relator adopted the proper proceeding, his right to try the title of Osborn to the office of alderman would have been conceded. Then the acts of the common council in permitting Osborn to vote and act as alderman, and in declaring there was no election of clerk, and also the acts of any other board or officer in deciding as to whether Cross was or was not properly elected, could have been inquired into by the proper tribunal; and as to those acts, it is apprehended that the proceeding would have been direct, and not collateral. It would seem to be a just position, that a proceeding in the nature of a *quo warranto* is peculiarly adapted, and specially intended, to review all the acts of inferior boards or officers; and that in such case the rule that the exercise of a given discretion by a particular board or person, will not generally be reviewed, does not apply with the same force as in other cases. The rights not only of the contesting parties, but of the People, are deeply involved in these questions; and to permit the rule to apply to them with the same strictness as it does in other cases, would be inconsistent with the ends of justice. The exercise of discretion in such cases is too important to be final; and, if subject to review at all, a proceeding by information is the direct and appropriate remedy.

The judgment of the Court below is therefore reversed, and the cause remanded for further proceedings.