[Department One. — February 16, 1883.]

## SYLVESTER HULL, PETITIONER, *v.* THE SUPERIOR COURT OF SHASTA COUNTY, RESPONDENT.

OFFICE — INCUMBENT — SUMMARY PROCEEDING TO RECOVER BOOKS AND PAPERS. — Under sections 1015 and 1016 of the Political Code, the actual incumbent of an office may maintain a summary proceeding by petition to recover the books and papers pertaining to the office, and the court may order their delivery, and enforce the order by attachment or warrant. His right to the office can only be called in question by an information against him in the nature of a *quo warranto.*

ID. — QUALIFICATION OF INCUMBENT — INSUFFICIENCY OF BOND AS MATTER OF DEFENSE. — The fact of the incumbency being established, an objection to the qualification of the incumbent on the ground that the penalty of the bond given by him was less than the law required, is not available as a defense to the proceeding. (McKEE, J., and Ross, J.)

ID. — CLASSIFICATION OF COUNTIES — CENSUS. — Where a county of the third class is found by a new census to have the requisite population for a county of the second class, it may be organized by the board of supervisors as a county of the latter class, but until such organization it remains a county of the third class, and the provisions of the statute fixing the penalty of official bonds in counties of the second class have no application. (McKINSTRY, J.)

CERTIORARI to the Superior Court of the county of Shasta to review certain orders made in a summary proceeding to recover books and papers pertaining to the offices of sheriff and tax collector of that county.

The facts are sufficiently stated in the opinion of MR. JUSTICE McKEE.

*Clay W. Taylor, A. M. Rosborough,* and *R. A. Redman,* for Petitioner.

*I. S. Belcher,* and *Chipman & Garter,* for Respondent.

McKEE, J. — This is a proceeding by *certiorari* to review a proceeding had in the Superior Court of Shasta County. It appears by the record returned in the proceeding that on the 8th day of January, 1883, W. E. Hopping, claiming to be the sheriff and tax collector of the county of Shasta, and the incumbent in office, commenced the proceeding by filing a petition against Sylvester Hull and Robert Kennedy to compel them to deliver to him the books and papers belonging to the office in their possession, which it was alleged they had refused to deliver to him on demand. Hull and Kennedy appeared in the pro-

ceeding; one of them answered the petition, the other did not. Neither denied any of its allegations. The answer of Hull merely averred that the petitioner had not qualified.

But the petition alleged, and the court found that the petitioner was on the 8th of January, 1883, and ever since had been the duly elected and qualified sheriff and tax collector of the county, and the incumbent in office, and as such was entitled to the books and papers of the office in the defendant's possession. It therefore ordered such books and papers to be delivered to the petitioner, and enforced the order by an order for a warrant, directed to a constable of the county, commanding him to make search for, and to take and deliver such books and papers to the petitioner. These orders are now claimed to have been made without, or in excess of, the jurisdiction of the court.

But upon the filing of the petition, the court was authorized by sections 1015 and 1016 of the Political Code to proceed in a summary way after notice of the petition to the adverse parties, and to make the order applied for, and to enforce it by attachment or warrant. By these sections of the Code the court had jurisdiction of the subject-matter of the petition; and as it acquired jurisdiction of the persons of the defendants, it had jurisdiction to make the orders which were made and entered in the proceeding.

The real contention, however, is that the court exceeded its jurisdiction in making the orders, because the petitioner had not alleged in his petition that he was the "actual incumbent" of the office. The allegation is: "That on the 8th of January, 1883, he was, and ever since has been, and he now is, the duly elected and qualified sheriff and *ex officio* tax collector of Shasta County, State of California, and at said times he was, and he now is, the incumbent of the said offices." It was also alleged, "that he was formerly, to wit, immediately prior to said 8th day of January, 1883, an incumbent of said offices, and the said Robert Kennedy was, immediately prior to said last named date, under-sheriff and deputy tax collector of said county." These allegations were admitted, and from them, as facts, the inference is fairly deducible that the petitioner Hopping was the complete incumbent, and Hull had been the former incumbent of the office.

Besides, the record shows that Hopping was elected by the people of Shasta County at the general election of 1882; that he received his certificate of election, and within the statutory time after receiving the same took and subscribed the oath of office and gave two bonds; one as the official bond of the sheriff in the sum of ten thousand dollars, and the other as the bond of the tax collector in the sum of fifteen thousand dollars, both of which were approved, filed, and recorded, and at the time of the proceeding he was peaceably acting as sheriff, and engaged in performing the duties of the office.

Of course, election alone did not constitute Hopping the incumbent of the office. The law required him, after receiving his certificate of election, to take the oath of office, and give bonds within the time required by law. If he failed to do these things according to law, and within the time required by law, the office was vacant. (Sections 907, 947, 996, Pol. Code; *Payne* v. *San Francisco*, 3 Cal. 125; *People* v. *Taylor*, 57 Cal. 620.) Until an officer-elect takes the oath of office and gives bonds according to law, he is not authorized to discharge the duties of the office. He is not an incumbent.

But the allegations and proofs in the proceeding under review were sufficient to sustain the findings and decision of the court that Hopping was the actual incumbent.

In the case of *The People* v. *Clingan*, 5 Cal. 389, which was a proceeding by *quo warranto* against one who claimed to exercise the duties of sheriff of Marin County, the fact that the claimant acted as sheriff was, in connection with his certificate of election, held sufficient to raise the presumption that he had executed his bond and taken the oath of office. So in the proceeding under review — a proceeding which involved only the question of right to the books and papers of the office, and not of the right to the office itself — there was not only that presumption in favor of incumbency of the office, but the people themselves made out a *prima facie* case of election, qualification, and incumbency in favor of the petitioner.

But, it is answered, there was no qualification, because, under the United States census of 1880, Shasta County had a population of 9,492 inhabitants, and was, by operation of section 4007 of the Political Code, classified as a second-class county, the

sheriff and tax collector of which was required by law to qualify by giving bonds, as sheriff for twenty-five thousand dollars, and as tax collector for the sum of thirty thousand dollars. Such bonds were not given by Hopping; the bonds which he gave were for the amounts fixed by law for counties of the third class; therefore, it is contended, the bonds were wholly insufficient and not according to law, and did not qualify Hopping to discharge the duties of the office, or to become the incumbent of it.

*Prima facie*, however, the bonds under which he qualified were sufficient. Being sufficient, his right to the office and its incidents was unquestionable. But even if the bonds were insufficient, that circumstance would merely affect his right to the office; it would not touch the question of his incumbency. Being the actual incumbent of the office, he was in possession under color of right; he was at least a *de facto* officer, and had a vested right to act as such until his right was questioned by some one in a proper proceeding for that purpose. Such a contest could not be originated by *certiorari*. It can be made only by an original proceeding by information in the nature of a *quo warranto* against him as incumbent of the office. (*People* v. *Olds*, 3 Cal. 176; *People* v. *Scannell*, 7 Cal. 432; *Satterlee* v. *San Francisco*, 23 Cal. 320; *People* v. *Sassovich*, 29 Cal. 480.)

We think the Superior Court regularly pursued its authority, and the orders are affirmed.

Ross, J., concurred.

McKinstry, J., filed a concurring opinion as follows: — I concur. Section 4006 of the Political Code reads: "Whenever a new census is taken, the counties on the first day of July thereafter are, by operation of law, classified under such census." If it should be admitted that section 4006 refers to a United States census, that we take judicial notice of the completion of the census of 1880, and of the fact that, by the return of such census Shasta, has a population of more than eight thousand; and it should further be admitted that under the law the failure of the sheriff to file within the time limited by the statute a *proper* bond, necessarily deprived him of his character as an

actual incumbent, the results claimed by petitioner would not follow.

It would not be the effect of the new census to reorganize Shasta as a county government of the second class. Each supervisor must be an elector of the district he represents. (Pol. Code, § 4023.) The new census would impose upon the existing board of supervisors the duty of redistricting the county — a duty which could perhaps be enforced by mandamus. (Pol. Code, § 4023.) The increased population would give Shasta a right to a governmental organization as a second-class county, but the Code provides the only mode by which such organization may be given an actual existence and operation. Until the county is redistricted, and provision made for the selection of the appropriate number of supervisors, Shasta remains of the third class. Otherwise it would be a second-class county as to the sheriff's bond, but a third-class county with reference to the far more important matter of the number of its governing body, their powers and duties.

The *title* of the Code in which are found the sections above referred to is " The Government of Counties." A county government of the second class is one with five supervisors. Shasta has three supervisors, and cannot have more until the three shall redistrict the county. Until they discharge their duty of providing five districts, so that the county government may be made to accord with other county governments of the second class, Shasta remains a third-class county, although it may be, in a sense, classified as of the second class, and entitled to a second-class government. Its officers are officers of the third class. The Code contemplates no such anomaly as that a third-class county shall have a second-class sheriff. Section 4122 of the Political Code requires of county officers official bonds corresponding to the class of the county " of which they are officers." All are officers of the same class. Hopping is sheriff of a county of the third class, until the government of a second-class county is set into operation.