TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-809 |
|  | : |  |
| of | : | November 16, 1999 |
|  | : |  |
| BILL LOCKYER | : |  |
| Attorney General | : |  |
|  | : |  |
| CLAYTON ROCHE | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

CALIFORNIA COMMON CAUSE, LEAGUE OF WOMEN VOTERS OF CALIFORNIA, AND CALIFORNIANS FOR POLITICAL REFORM FOUNDATION ("Relators") have requested this office to grant leave to sue in quo warranto upon the following question:

May the Bipartisan Commission on the Political Reform Act of 1974 be restrained from taking any action, including the expenditure of public funds, on the grounds that it is illegally constituted?

CONCLUSION

Quo warranto does not lie to determine whether the Bipartisan Commission on the Political Reform Act of 1974 may be restrained from taking any action, including the expenditure of public funds, on the grounds that it is illegally constituted. Moreover, recent legislation will confirm the present composition of the commission on January 1, 2000, so as to render the question virtually moot. Thus, a quo warranto proceeding now would not be in the public interest.

ANALYSIS

In 1998, the Legislature established the Bipartisan Commission on the Political Reform Act of 1974 ("Commission") to "investigate and assess the effect of the Political Reform Act of 1974 on core political speech protected by the First Amendment to the United States Constitution, and on candidates for public office, campaign committees, the voters, state and local officials, and public employees, including the effect upon communications made or received by elected and other public officials to and from members of the public and lobbyists." (Stats. 1998, ch. 1080, § 4.)[1] The legislation sets forth the composition of the Commission as follows:

". . . The commission shall consist of 14 members, appointed as follows:

"(a)   Four members appointed by the Governor, two of whom shall be members of the Democratic Party and two of whom shall be members of the Republican Party. The Governor shall designate one of these members to serve as chairperson of the commission. One of the members appointed by the Governor shall be a public member who is a representative of a nonprofit public interest organization.

"(b)   One member appointed by the President pro Tempore of the Senate.

"(c)   One member appointed by the Minority Floor Leader of the Senate.

---

[1] All references hereafter to chapter 1080 of the Statutes of 1998 are by section number only.

"(d)    One member appointed by the Speaker of the Assembly.

"(e)    One member appointed by the Minority Floor Leader of the Assembly.

"(f)    Two members appointed by the Fair Political Practices Commission from among former chairpersons of that commission, one of whom shall be a member of the Democratic Party and one of whom shall be a member of the Republican Party.  If, however, either of these appointments cannot be made because there is no qualified person willing to serve, then a former staff employee of the Fair Political Practices Commission may be appointed to serve in lieu of a former chairperson of the commission.

"(g)    Two members appointed by the Secretary of State, one of whom shall be a member of the Democratic Party and one of whom shall be a member of the Republican  Party.  One of the members appointed by the Secretary of State shall be a person who has been, but is not currently, registered as a lobbyist pursuant to the Political Reform Act of 1974 (Title 9 (commencing with Section 81000) of the Government Code).

"(h)    Two members appointed by the Attorney General, one of whom shall be a member of the Democratic Party and one of whom shall be a member of the Republican Party."  (§ 2.)

Of the 14 Commission members, the number of "political attorneys" is restricted to three:

"No more than three members of the commission may be attorneys at law who devote more than 10 percent of their professional practice time to legislative, political campaign, or other politically related activities."  (§ 3, subd. (b).)

The Relators allege that of the four members on the Commission appointed by the Governor, none is "a public member who is a representative of a nonprofit public interest organization."  (§ 2, subd. (a).)  They also allege that the Commission consists of four and possibly five members "who devote more than 10 percent of their professional practice time to legislative, political campaign, and other politically related activities." (§ 3, subd. (b).)  Based upon the present composition of the Commission, the Relators contend that the Commission is illegally constituted and, accordingly, should be restrained from taking any action or expending any public funds.

Section 803 of the Code of Civil Procedure authorizes the filing of actions in the nature of "quo warranto." It provides:

"An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."[2]

Whether the Attorney General should grant a private party leave to sue in quo warranto is a matter for the exercise of discretion, with the public interest being the paramount consideration. As stated in *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 648:

"While the Attorney General argues that a court should never compel him to grant leave to sue in quo warranto, and language in certain of the above cases sustains that position, we need not make so sweeping a ruling. . . . [W]e hold that, to justify court intervention, the abuse of discretion by the Attorney General in refusing the requested leave must be extreme and clearly indefensible.

"We do not find a showing of such extreme and indefensible abuse in the instant case. In the exercise of his discretion the Attorney General must essentially determine whether the public interest would be subserved by the institution of the suit. As stated in *State Railroad Com.* v. *People* (1908) 44 Colo. 345: 'Primarily, this remedy belongs to the state, in its sovereign capacity, to protect the interests of the people as a whole and guard the public welfare . . . [t]he Attorney General . . . is the proper one to determine, in the first instance, when the interests of the public justify a resort to this remedy.' [Citation.]" (See also *International Assn. of Fire Fighters* v. *City of Oakland*, *supra*, 174 Cal.App.3d at 697.)

Quo warranto is the appropriate remedy to try a person's title to office.

---

[2] In *International Assn. of Fire Fighters* v. *City of Oakland* (1985) 174 Cal.App.3d 687, 694-698, the court comprehensively discussed the history of quo warranto proceedings in California.

(*Hallinan* v. *Mellon* (1963) 218 Cal.App.2d 342.) Here, the Relators allege that at least two members of the Commission are illegally holding office in that the Governor did not appoint a representative of a nonprofit public interest corporation and more than three members are "political attorneys." Accordingly, quo warranto would be the appropriate method to try title to these public offices. However, the proceeding is properly directed against individual officers, not the Commission as a whole.

The Relators contend that they must sue the entire Commission because they cannot identify which members would be subject to expulsion should they prevail. As to the four gubernatorial appointees, all appear to the Relators to be equally qualified. The same is true of the "political attorneys." Accordingly, the Relators urge that if quo warranto were brought against the individual members, the court would not be able to identify which members must be removed from office.

In our view, such dilemma is not without a solution. "Until an officer-elect or officer-designate takes the oath of office and gives whatever bonds are required, he is not authorized to discharge the duties of the office. He is not an incumbent. [Citation.]" (*Ensher, Alexander & Barsoom, Inc.* v. *Ensher* (1965) 238 Cal.App.2d 250, 255-256; see Gov. Code, §§ 1360, 1450; *Bradley* v. *Clark* (1901) 133 Cal. 196, 200-201; *Hull* v. *Superior Court* (1883) 63 Cal. 174, 176; *People* ex rel. *Bradshaw* v. *Thompson* (1942) 55 Cal.App.2d 147, 149.) As explained in *People* v. *Whitman* (1850) 10 Cal. 38, 43-44: "[T]o constitute the 'holding' of an office . . . there must be the concurrence of two wills—that of the appointing power and that of the person appointed." Thus, the sequence in which the gubernatorial appointees and "political attorneys" qualified for office could determine which members would be subject to possible ouster. For example, the first three gubernatorial appointees would be fully qualified, leaving the fourth potentially subject to a quo warranto action. Likewise, the first three "political attorneys" who qualified would be exempt from such an action.

The authorities cited by the Relators to justify naming the Commission as the proposed defendant are inapposite. These authorities involve public franchises granted to municipal or other public corporations. (*Keech* v. *Joplin* (1909) 157 Cal. 1; *People Boardman* v. *Town of Linden* (1895) 107 Cal. 94; *Spring Valley W. W.* v. *Schottler* (1882) 62 Cal. 69; 15 Ops.Cal.Atty.Gen. 62 (1950); see also 81 Ops.Cal.Atty.Gen. 243 (1998); 81 Ops.Cal.Atty.Gen. 240 (1998).) In *International Assn. Of Fire Fighters* v. *City of Oakland*, *supra*, 174 Cal.App.3d at 694, the court declared:

". . . 'In theory, public corporations of any character whatsoever, exercising governmental functions, do so by reason of a delegation to them of a part of the sovereign power of the state. Where they are claiming to act and

are actually functioning without having complied with the necessary prerequisites, they are usurping franchise rights as against paramount authority, to complain of which it lies only within the right of the state itself.'"
(See also *People* v. *City of Oakland* (1891) 92 Cal. 611, 614.)

No such usurping of franchise rights pertains to the Commission as a whole, which has been legally established by the Legislature. The Commission consists of 14 individual offices. At least nine members, a quorum, are legally holding their offices. How can it be said that the Commission has no power to act?[3]   The only issue to be resolved is whether any of the individual Commission members are holding office unlawfully.

PUBLIC INTEREST

In 1999, the Legislature enacted legislation (Stats. 1999, ch. 365) that will affect the composition of the Commission beginning January 1, 2000. One change will provide that no more than three members of the Commission *who are appointed by elected officials* may be "political attorneys." (Stats. 1999, ch. 365, § 1.) The purpose of this change was explained in several legislative committee reports, including the report of the Assembly Committee on Appropriations for its hearing on August 18, 1999:

"The enabling statute restricts to three the number of 'political attorneys' (attorneys devoting more than 10 percent of their practice time to politically related activities) that may be appointed as commission members. However, four have been appointed-three by elected officials and one by the Fair Political Practices Commission. This bill limits the three-attorney restriction to members appointed by elected officials, thereby permitting all four 'political attorneys' to continue serving on the commission."[4]

Hence, all "political attorneys" who are presently on the Commission will be validly holding office effective January 1, 2000.

The 1999 legislation will not affect the requirement that one of the gubernatorial appointees must be a representative of a nonprofit public interest corporation.

---

[3] Even as to any questionable appointees, they are de facto officers, and their actions would be valid and binding. (See 74 Ops.Cal.Atty.Gen. 116, 121 (1991).)

[4] The possible fifth "political attorney" whose appointment the Relators question was also appointed by non-elective officials. Consequently, the 1999 legislation will confirm his qualifications as well.

However, we note that such a "representative" need not necessarily be an officer, employee, or even a member of a public interest nonprofit corporation under the terms of the 1998 legislation. It is conceivable that any member of the public may qualify as a "representative." (See 82 Ops.Cal.Atty.Gen. 154 (1999); 64 Ops.Cal.Atty.Gen. 685 (1981).)

Not only, therefore, is quo warranto inappropriate to restrain the Commission from taking any action or spending public funds, such a proceeding would not serve the public interest due to the Legislature's confirmation of the Commission's current membership effective January 1, 2000. (See, e.g., 82 Ops.Cal.Atty.Gen. 6 (1999); 81 Ops.Cal.Atty.Gen. 207 (1998); 81 Ops.Cal.Atty.Gen. 51 (1998); 80 Ops.Cal.Atty.Gen. 290 (1997); 79 Ops.Cal.Atty.Gen. 243 (1996).

Leave to sue the Commission in quo warranto is denied.

* * * * *