JAMES DUFFY V. STATE, EX REL. ISAAC W. EDSON.

FILED NOVEMBER 21, 1900. No. 11,301.

1. **Quo Warranto:** CONSENT OF COUNTY ATTORNEY. Quo warranto proceedings begun by the relator in his own behalf as claimant to the office, in the prosecution of which the county attorney joined as one of the attorneys in the case, *held* to be sufficient to show that the action is brought with the consent of the county attorney, as required by section 1, chapter 71, Compiled Statutes, 1899. *Kane v. People,* 4 Nebr., 509, followed.

2. **Petition:** SINGLE CAUSE OF ACTION. Petition examined, and *held* to state but one cause of action.

3. **Trial Without a Jury:** ERROR: SUFFICIENT EVIDENCE. In an action tried to a court without a jury, prejudicial error can not be predicated on the rulings in the admission of evidence. A reviewing court will only ascertain whether there is sufficient proper and competent evidence to support the judgment rendered.

4. **Case Distinguished.** Case at bar distinguished from *State v. Lansing,* 46 Nebr., 514, 527.

Duffy v. State.

5. **Individual Right:** PROSECUTION: FAILURE OF OFFICIAL. Where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain such right by the neglect or misconduct of a public officer, the law will protect him.

6. **Presumption That Officer Will Do His Duty:** OFFICIAL BOND: APPROVAL: LIMITATION. A county officer elect may properly rely upon the presumption that a board of county commissioners will do its duty and convene in timely session to act upon official bonds presented to it for approval, within the time limited by statute.

7. ———: ———: ———: ———: NON-ACTION: NUNC PRO TUNC. If a person elected to an office presents for approval an official bond in all respects as required by law, within the time fixed by statute, and because of the failure of the approving body to meet, or by reason of non-action thereon, or for any other neglect or omission of duty on their part, an official bond is not approved until after the time limited, and is then approved and filed, the same will be deemed a compliance with the provisions of the statute, and the doctrine of relation is applicable, each subsequent act relating back to the dominant one, to wit, delivery for approval, and will be deemed as having been done of the time within which, in contemplation of law, it should have been approved.

8. **Judicial Officer:** OFFICIAL OATH: CONSTITUTION. A judicial officer, in qualifying for an office to which he has been elected, is required to take and subscribe to the oath prescribed in section 1, article 14, of the constitution.

9. **Failure to Take Oath:** VACANCY. Where an officer elected to a judicial office failed to take the constitutional oath of office within the time contemplated by statute, because of a mistake on his part as to the proper official oath to be by him taken, but soon thereafter took and subscribed to the proper oath and filed it in the proper office before the office had been declared vacant, or any other right or title had intervened, *held*, that such failure did not of itself forfeit the office, and was not a refusal to take the constitutional oath within the meaning of the word as there used.

10. **Official Bond:** APPROVAL: FILING: MISTAKE: DISCOVERY OF ERROR: LIMITATION. Where, as in this case, the officer elect presented with his official bond, which was approved and filed, the official oath prescribed by section 1, chapter 10, Compiled Statutes, 1899, instead of the oath required by section 1, article 14, of the constitution, under the mistaken belief that the oath taken was the one required by law, and soon afterward, but beyond the time limited by law, upon discovery of the error, subscribed to and filed with the proper officer the oath required by the constitu-

tion, *held*, that such error was an innocent mistake and over-
sight, and might be thus corrected, and that his right and title
to the office was not forfeited because of such mistake.

ERROR to the district court for Webster county. Tried
below before ADAMS, J. *Affirmed.*

*Chaney & Mercer, R. T. Potter* and *B. McNeny*, for plain-
tiff in error.

*A. D. Ranney* and *Overman & Blackledge, contra.*

HOLCOMB, J.

By quo warranto proceedings, the relator, Isaac W.
Edson, defendant in error, seeks to obtain possession of
the office of county judge of Webster county, which, it is
alleged, is wrongfully withheld by the respondent,
James Duffy, plaintiff in error. Briefly, the facts, as dis-
closed by the record, may be summarized as follows: The
relator was elected to the office named at the general
election held in 1899. The respondent was the then in-
cumbent of the office, having been previously elected for
the term expiring on the first Thursday after the first
Tuesday in January, 1900. After his election, and on
December 30, 1899, the relator made and presented for
approval his official bond, with the statutory oath of office
provided for by section 1, chapter 10, Compiled Statutes,
1899, indorsed thereon. The bond as thus prepared was
presented to and filed with the county clerk, who is also
the clerk of the board of county commissioners who are
charged with the duty of approving bonds of county offi-
cers, the board at the time not being in session. Action
on the bond with respect to approval was not had by
the board of county commissioners until its first sitting
after the bond had been filed, which was at a regular
meeting held January 9, 1900. The bond on that day was
accepted, approved and recorded as presented. On the
same day, and after the approval of relator's bond, the
board of county commissioners passed a resolution, in

substance reciting that the right of relator to hold the office to which he was elected having been questioned by some, because of the non-approval of his bond until the time mentioned, they thereby, without attempting to determine whether a vacancy existed, appointed him to the same office. Another bond, with the same oath indorsed thereon, was immediately executed, reciting therein the resolution of appointment, which was likewise approved by the board and recorded in the office of the county clerk on the same day. On January 22, an oath of office, in form as prescribed by section 1, article 14, of the constitution, was taken and subscribed to by the relator, and on the same day filed in the office of the county clerk. Various demands by the relator were made upon the respondent for the possession of the office, all of which were refused. It also appears that the respondent, upon the theory that the failure of the relator to secure the approval of his bond on or before the time mentioned in section 15 of said chapter worked a forfeiture of his right to the office, made and tendered for approval on January 9 a "hold-over" bond as provided in section 17 of the same chapter, on which was indorsed the statutory oath similar to the one taken by relator. The county commissioners rejected and refused to approve this bond until compelled to do so by an order of the district court upon application for a writ of mandamus issued at the instance of respondent. On January 16 the board, in pursuance of the writ, also approved the "hold-over" bond tendered by respondent. The present suit was instituted on the 26th of January, resulting in a judgment of ouster against respondent, from which judgment he prosecutes error proceedings to this court.

While some objections of a technical nature are urged against the proceedings by counsel for respondent, we are of the opinion that the case should be disposed of upon its merits, and that the technical objections presented are untenable.

Regarding the authority of relator to prosecute the action, the record discloses that the proceedings were begun by relator in his own behalf as claimant to the office, and that the county attorney joined in the prosecution as one of the attorneys in the case. This is proof sufficient that the action is brought with the consent of the county attorney, and is all that is required by section 1, chapter 71, Compiled Statutes, 1899. *Kane v. People*, 4 Nebr., 509.

To the objection that two separate and distinct causes of action are set forth in the petition, it may be said that relator has only attempted to follow section 707 of the Code, which provides that an information in quo warranto "shall consist of a plain statement of the facts which constitute the grounds of the proceedings, addressed to the court which shall stand for an original petition." While the petition probably contains surplusage, a fair construction of the whole of it leads to the conclusion that relator relied upon his election to the office and qualification thereunder.

As to the action of the board in attempting to strengthen his title by making the appointment without attempting to determine the existence of a vacancy, it may, we think, be said that no vacancy at that time to be filled by appointment by the county commissioners existed, and that their action in that regard was a nullity, and without force or effect. *Richards v. McMillin*, 36 Nebr., 352.

While it is urged that there was error in the admission of evidence, this objection may be disposed of with the statement that the case was tried to the court without a jury, and the only question which we are to determine is whether the judgment is supported by sufficient competent evidence and the pleadings in the case. This rule is so well settled that no citations in support of the same seem to be required.

The two controlling propositions in the case are: First, will the failure of relator to secure the approval of his

bond within the period provided by statute under the facts in this case defeat his title to the office; and, second, what is the legal effect or consequence of his subscribing to, and presenting with his bond, the oath as prescribed by section 1, chapter 10, Compiled Statutes, 1899, instead of the oath required by section 1, article 14, of the constitution, which latter oath was not taken and filed until January 22, as hereinbefore mentioned. The two questions will be considered in the order named.

Section 15 of the chapter under consideration provides in substance that if any person elected to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by that act, his office shall thereupon *ipso facto* become vacant. This section, with others relating to it, after a full discussion of their scope and effect, was construed in the case of *State v. Lansing*, 46 Nebr., 514, 527, and it was there held that a compliance with these provisions was a condition precedent; that such provisions were self-executing, and unless the official bond, where one is required, is filed within the time provided by law, the person elected or appointed loses all right to the office. Says IRVINE, C., who wrote the opinion, after reviewing the authorities: "We therefore think that whether the result be reached by a review of the authorities or by an inspection of the statute itself, our legislature has declared in unmistakable terms that where an official bond is required it must be filed within the time provided by law, and that its filing within time is a condition precedent to the induction into office of the person elected; that Lansing did not present his bond within time; that he failed thereby to perform a condition precedent, and that he thereby lost all right to claim the office unless his right was saved by a constitutional question, which next arises for consideration." While the conclusion announced in the opinion referred to was not concurred in by all the members of the court, the construction given the sections therein referred to must now

56

be regarded as the settled law of this state. It is, however, urged that the rule announced in that case is not applicable to the case at bar. This position seems to us correct. There is a distinction of vital importance between the two cases. In the *Lansing Case*, no attempt was made by the person elected to qualify as by law provided; no bond was attempted to be executed, and none presented for approval or filed with the approving body for its consideration on the part of the officer elected. There was an utter failure on his part to take any steps or make any attempt to qualify himself for the office to which he had been elected. It was under these circumstances, and the facts in connection therewith, that the court reached the conclusion announced in the opinion referred to. In the case at bar it is to be observed that the relator, after his election, made and signed an official bond as provided by law, and indorsed thereon an official oath conforming to the statutory provisions, and presented the same to the county clerk, who is also the clerk of the board of county commissioners, on December 30, which was several days prior to the expiration of the time allowed by law for the approval of his bond. He, in fact, did all that was in his power and which he was required to do and within the time limited by statute. His bond should have been approved and filed for record, to comply with the strict letter of the statute, on January 4, following. The board of county commissioners, however, did not in fact convene until January 9, which was subsequent to the statutory period within which official bonds were required to be approved. At its first sitting the board approved the bond, which act, if performed on or before January 4, would, so far as the execution of the bond was concerned, have rendered relator's right to the office beyond peradventure of doubt. Its approval is ample evidence that the bond tendered was a good and sufficient one, and that no objection to its form or other requirement in its execution existed. The question therefore arises, will the failure of the approv-

ing officers to consider and approve the bond presented within the time fixed by statute, but afterwards acting favorably upon it, defeat a claimant's right and title to an office to which he has been elected? We answer in the negative. Says MAXWELL, C. J., in *Parker v. Kuhn*, 19 Nebr., 394, 396: "It is a well established rule that where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain his right by the neglect or misconduct of a public officer the law will protect him"; citing *Smiley v. Sampson*, 1 Nebr., 83; *Lytle v. Arkansas*, 9 How. [U. S.], 333; *Dobson v. Dobson*, 7 Nebr., 296; *Louderback v. Boyd*, 1 Ash. [Pa.], 380; *Noble v. Houk*, 16 S. & R. [Pa.], 421; *Republican V. R. Co. v. McPherson*, 12 Nebr., 480; *Curran v. Wilcox*, 10 Nebr., 449. The relator, it seems to us, might very properly rely upon the presumption that the board of county commissioners would do its duty, and convene in timely session to act upon a bond presented to it for approval within the time limited by statute. Its failure to do so can scarcely be said to be a neglect upon the part of the relator. If the failure of the board to act within the time prescribed by statute deprives the relator of the office, then it lies within the power of a person or approving body, charged with the duty of approving bonds, to defeat the expressed choice of the people, and in many instances secure the appointment of persons of their own selection to fill such office. This is a doctrine appearing to us wholly untenable. Such a construction of the statute would be unnatural, strained, and one never, in our judgment, intended by the legislature. The views above expressed are in consonance with former expressions of this court upon the same subject. In *State v. Frantz*, 55 Nebr., 167, 171, SULLIVAN, J., on behalf of the court, says: "We think that the failure of Barton to have his bond executed and approved within the statutory period was not the result of his neglect, and that section 15 aforesaid has no application to cases of this character. Such failure, according to the averments of the informa-

tion, was entirely due to the neglect or willful omission of the precinct election boards to discharge the duties imposed upon them by law."

It is contended by respondent that mandamus should have been resorted to to compel action by the approving board within the time limited by statute. While mandamus in a proper case would undoubtedly lie, the proceeding was unnecessary in this instance, because the board was willing to approve the bond as soon as convened in session, and capable of taking such action. Voluntary action was taken as soon as action could have been secured by compulsion. If mandamus was unnecessary because of the willingness of the board to act, but the action was taken subsequent to the time when it should have been, the same principle, we apprehend, would apply as in a case where the board, being in session at the proper time for the consideration of such matters, took no action, or action adverse to the party, arbitrarily and without sufficient reason therefor. In *State v. Lynn*, 31 Nebr., 770, 773, it is held that, where a good bond with the proper oath is filed in time, and adverse action is taken thereon, without sufficient reason, the proper remedy is by mandamus; but this, however, would not prevent a sufficient bond which had been duly filed and which the board was compelled to approve, from being in force from the time it should have been approved. By a parity of reasoning it would seem that, in this case, although the bond was not approved within the required time, being good and sufficient, and tendered in good season, the failure of the board to act within the proper time would not forfeit relator's right to the office.

The conclusion proper to be reached from the foregoing is that if a person elected to an office presents for approval an official bond, in all respects as required by law, within the time fixed by statute, and because of the failure of the approving body to meet, or by reason of nonaction thereon, or for any other neglect or omission of duty on their part, an official bond is not approved until

after the time limited, and is then approved and filed, as in this case, the same will be deemed a compliance with the provisions of the statute, and the doctrine of relation is applicable, each subsequent act relating back to the dominant one, to wit, delivery for approval, and will be treated as having been done as of the time within which, in contemplation of law, it should have been approved. This rule, while not fully determined, was adverted to in the case of *Holt County v. Scott*, 53 Nebr., 176.   The 11th paragraph of the syllabus .in that case is as follows: "*Quære:* Are approval, taking and subscribing the oath of office indorsed on the bond, and its filing for record constituent elements of its delivery, the filing being the dominant one; and if it is within the limit of time prescribed by statute, and the approval of a later date, and beyond that of the limit, does the approval relate back to the filing?" Says HARRISON, J., in writing the opinion of the court on the same subject, p. 199: "There is another argument which might be urged as establishing the validity and potency of the bond in suit, viz., that, when filed in time, as was this one, a later approval relates back to the time of filing, and will be considered as done of that date.   This is on the ground that where there are several acts which may be said to be concurrent, required to be done to make or complete a matter or thing, then the dominant act in this case,—the delivery,—shall be preferred, and to it the other acts have relation.   Supporting this doctrine are *State v. Tool*, 4 Ohio St., 553; *Drew v. Morrill*, 62 N. H., 23.   This point was not discussed by counsel and as to whether it should prevail or not, we will merely indulge in a query; but if there ever were cases in which the doctrine of relation should be invoked and apply, it is probably in actions of the nature of this." In the case of *State v. Tool, supra,* decided by the supreme court of Ohio, speaking of the failure of approving officers to approve a bond within the time prescribed by statute, and with regard to a statute similar to our own, it is said, p. 559: "The bond was executed and delivered

to the commissioners, for their acceptance, within the time prescribed by law, but was neither accepted nor rejected on that day; but on the next day, and during the regular June session of the commissioners, was accepted and approved by them.  *  *  *  In such case the doctrine of relation would apply, and the acceptance, by the commissioners, of the bond on the next day, would relate back to the time of the delivery of the bond to the commissioners for their acceptance.  *  *  *  But, in this cause, the oath was not made or.subscribed by the treasurer, nor indorsed on the bond, until the next day after the time prescribed by law; and therefore, it is claimed, the office became vacant.  *  *  *  Still, we think the indorsement of the oath more properly follows the acceptance, and if made immediately after the acceptance, that the oath, indorsement and the acceptance will have relation to the time of the first act of the treasurer, viz., the delivery of the bond to the commissioners for their acceptance, and that this original act shall, in the language of Viner, be preferred; and to this first act the others shall have relation, and, by this fiction, the whole shall be considered as done on or before the first Monday of June." On the same subject says the supreme court of California, in *People v. Scannell,* 7 Cal., 432, 440, a case in many respects like the one at bar: "But even in cases where the party seeks to enter upon the duties of an office, and he is required to give a bond as a precedent condition, and he does execute and present a good bond with sufficient sureties, and the officer, or board, whose duty it is to approve or reject the same, neglects or refuses to act it is not sufficient cause to defeat his rights." See, also, *Ross v. Williamson,* 44 Ga., 501. It is apparent from the foregoing that a failure of the approving board to meet and act at the time contemplated by law can not be invoked to the prejudice of one who, in all other respects, has done that which is necessary to qualify him for the office to which elected, and, that in this case the right of the relator to the office claimed by him is not

defeated by the non-action of the board of county com-
missioners respecting the approval of his official bond
until January 9, when it was approved.

As to the second proposition, to wit, the filing of the
statutory oath with the official bond, instead of the re-
quired constitutional oath, it may be well in the begin-
ning to observe that the facts upon which legal con-
clusions are based are always to be kept in mind. They
are quite generally, if not always, as important in ar-
riving at a decision as the enunciation of a correct legal
proposition, and in this case the facts upon which legal
conclusions are founded we regard as of weighty impor-
tance. Having reached the conclusion that the failure of
relator to secure the approval of his bond within the time
mentioned by statute, because of the non-action of the ap-
proving board, does not militate against him in his claim
to the office, so far as that question is concerned we are to
regard him as being in the same position as he would be
had his bond been approved within the time limited by
statute. It is also to be remembered that the incumbent
has no claim to the office other than the right to hold
until his successor, whether elected or appointed, has
qualified. It is quite obvious that if relator's failure to
subscribe to and file the constitutional oath within the
time mentioned in the statute forfeits his right to the
office, then the incumbent, who also failed to take the
same oath in his attempt to qualify as a "hold-over"
officer, has lost any and all claim to the office which he
may have by virtue of his attempted qualification. He
is in the attitude of one holding the office without claim
thereto, and has the right only to hold until his successor
has been selected and has qualified for the position. Men-
tion is made of this, not for the purpose of suggesting
that relator's title to the office may be established by
showing a weaker title in his adversary, but to show the
exact status or condition the office is in, and that no
adverse title or claim thereto has intervened. The office
is as though a vacancy existed except as to relator's right

and title thereto. That a county judge is required to take
the constitutional oath in order to qualify himself for
the office to which he has been elected, we think is a
proposition made so clear by the statute that it is not
open to argument or controversy. The question then is,
whether a neglect to take such oath and file it in the
proper office within the same time the bond is required to
be filed forfeits the right of such person to the office. To
hold that such is required, is to give to the statute the
same construction regarding the taking of official oaths
as is given to it regarding the execution of bonds. It is
expressly provided that a failure to give the bond within
the time limited by the statute *ipso facto* vacates the
office, and it was upon this express and mandatory pro-
vision that the conclusion was reached as announced in
the case of *State v. Lansing, supra.* The statute contains
no such provisions as to an official oath. There is a
very material difference between an official bond and an
official oath. The bond serves one purpose and the oath
an entirely different one. The bond gives pecuniary pro-
tection for wrongs done in office, while the oath appeals
only to the mind, judgment and conscience of the one
taking it for a faithful discharge of the duties of the
office. None will be heard to contend that it is manda-
tory or required that the oath shall be indorsed on the
bond, as provided by the statute, or presented with the
bond. It would be just as effective, and serve its pupose
as completely, if it were on an entirely separate instru-
ment and presented at a separate time. Nowhere is it
provided in the statute that a failure to subscribe to and
file the oath within the time limited shall forfeit the
office. So far as our observation has extended, and
clearly by the great weight of authority, the general rule
is held to be that, where the provisions as to filing of an
official oath are not expressly made mandatory by stat-
ute, then the statute will be construed as directory, and
the oath may be taken at any time before induction into
office. Mecham, Public Officers, sec. 251; *City of Chicago*

*v. Gage*, 35 Am. Rep. [Ill.], 182; *Ross v. Williamson*, 44 Ga., 501; *People v. Watts*, 73 Hun [N. Y.], 404; *State v. Colvig*, 15 Ore., 57; *People v. McKinney*, 52 N. Y., 374; *State v. Johnson*, 100 Ind., 489; *State v. Ruff*, 16 L. R. A. [Wash.], 140.

There are, we think, no states holding to the contrary doctrine, except where, by statute, it is expressly provided that, if the officer elected fails to take the oath within the time prescribed, he shall thereby forfeit the office. Under such statutes a construction thereof as being mandatory is certainly correct. It is a familar doctrine that forfeitures are not favored, and certainly we are not warranted in construing the statutory and constitutional provisions bearing on the subject under consideration as working a forfeiture of relator's title to the office unless the language used clearly intends that a forfeiture shall follow a failure such as the facts show to exist in the case at bar. In the present case, the oath required being the one prescribed by the constitution, we must turn to that instrument and ascertain its provisions. It is there provided that a refusal to take the oath therein prescribed shall forfeit the office. Nothing is said as to neglect or failure, nor are words used of similar import. The language is, "Any such officer * * * who shall refuse to take the oath herein prescribed, shall forfeit his office * * *." Webster gives the definition of "refuse" as "To deny, as a request, demand, invitation, or command; to decline to do or grant"; and "refusal" as "The act of refusing; denial of anything demanded, solicited, or offered for acceptance." It can hardly be said that relator has refused to take this oath. He has, in fact, taken it and filed it in the proper office as one of the steps in qualifying himself for the office which he is trying to secure, and this, before he appealed to the judiciary for an adjudication of his right and title thereto. Not only is there no refusal to take the official oath, but the failure on his part relates only to the time when taken, which was subsequent to the time when his official

bond was required to be filed. That he in good faith sought to qualify himself for the office to which he had been elected, by subscribing to and presenting with his bond an official oath, which he doubtless believed conformed to the law, is fairly presumable from the record. His failure to subscribe to the oath provided by the constitution for judicial officers was evidently a mistake, an oversight, and grew out of what the writer believes to be a popular belief, prevailing quite generally, that the statutory oath taken by him was all that was required of any person elected to any county office. It is quite probable that many similiar official oaths, under this misconception of the law, have been taken by many of the county judges of the state, in the belief that it was a full compliance with the requirements of law in that regard. It would be a rigid construction indeed, to hold that, in such cases, an office has become vacant, and a party thereto has forfeited his title to the office by reason of failure to take the correct oath of office. It would seem the truer rule, based on sounder principles, would be that an office would become vacant only when it becomes apparant that the incumbent, in the language of the constitution, "refused" to take the oath therein provided for. It is probably true that, if the office in question, or under similar circumstances another office, had been declared vacant for want of an official oath, or if another had properly qualified, under appointment or otherwise, and had been inducted into such office, an elected or appointed officer having failed to qualify could not thereafter take the proper official oath and claim the office. This question, however, is not presented in the case, and it is unnecessary to consider the same, or pass any opinion thereon, and no opinion is expressed on the subject. In the case at bar no person claims the office, and no intervening rights exist.

Under the facts as disclosed by the record in the case at bar, we think there is another and more cogent reason for holding his right to the office not forfeited because

of his failure to take and subscribe to the constitutional oath until the time when he did, on January 22. He subscribed to and filed in the proper office, and within the time contemplated by statute, an official oath conforming to the provisions of the statute as to all county offices, except of a judicial character. As a judicial officer, he should have taken the constitutional oath. We are of the opinion that his failure in this respect ought not to be permitted to work to his prejudice to the extent of forfeiting his title to the office. It seems to us that the taking of the statutory oath is such a compliance with the law regarding the subject as to render it permissible for him, upon discovery of the mistake (for such it is), to file an amended and supplementary oath, fully complying with the constitutional provisions. His failure in the first instance, as has been noted, was doubtless an innocent mistake upon his part. As soon as it was discovered that the constitutional and not the statutory oath was required of him, he took and subscribed to, and filed with the clerk, the proper official oath. He evinced no disposition either to neglect or refuse to take the oath required of him. The constitutional oath differs from the statutory one, more especially in that the former requires that the person subscribing to the oath shall swear that he, at the election at which he was chosen, had not improperly influenced the vote of any elector, and that he would not accept anything of value from a corporation or person, or promise of office for any official act or influence. Otherwise the two forms of oath are substantially the same.

It may, we think, be fairly said that the declaration that the affiant "will not accept anything of value or promise of office for official acts" is substantially covered by the averment in the statutory oath that he "will faithfully and impartially perform the duties of the office"; for how could he faithfully perform the duties of the office if he be unduly influenced in the manner prohibited by the constitutional oath? The two forms of oaths may

therefore be said to be substantially the same, except the statement in the constitutional oath that the officer elected has not improperly influenced the vote of any elector at the election at which he was chosen to such office. This is in the nature of a test oath. A person who violates its provisions, or who refuses to take the required oath, or who makes a false oath, forfeits his office. It has reference to that which has taken place in the past, and is a means of evidencing a person's fitness to hold any of the offices therein mentioned. Its provisions are retroactive, rather than prospective, as is ordinarily the case. There was in this case no hesitancy or refusal to subscribe to this oath when ascertained that the law required it. While the first oath, taken in a technical sense, was not a substantial compliance with the form prescribed by the constitution, yet it was, in our judgment, such a compliance as to admit of a correction of the error upon its discovery, by subscribing to, and filing in the proper office, an oath in form fully complying with law. Such correction, it appears to us, would cure the mistake, and, in the absence of intervening rights, secure to the relator his right and title to the office to which he was elected.

It is not to be doubted that a failure to subscribe to the official oath which is required by law would be sufficient to justify the rejection or non-approval of an official bond; but in the case we now have to deal with, the bond and oath were acceptable to those charged with the approval of the bond, as well as to those representing the state, and no objection thereto from either source was raised; but, on the contrary, these parties have chosen to waive the irregularity, and treat the relator as being rightfully entitled to the office.

It has been frequently said that the giving of official oaths and bonds is for the benefit of the public, and that the time of their filing may be waived, and the officer inducted into office, and dealt with as the person entitled thereto. This rule was definitely announced in *Paxton v.*

*State*, 59 Nebr., 460, and seems to be grounded on sound principle. In this case it is not to be forgotten that the only objection to relator's right to the office is interposed by the incumbent, who, as we have seen, is without any claim thereto in his own right. In *In re Executive Communication*, 14 Fla., 282, in speaking upon the subject, and regarding a constitutional provision broader than ours, in that it provides that a failure *or* neglect to take the oath therein prescribed shall forfeit all right to the office, one of the judges of the supreme court of that state pertinently says: "If an appointee, intending to take the oath required, makes an innocent mistake in the terms of the oath taken and filed, and a commission framed in accordance with law issues thereon, I am not prepared to say that this would be a neglect or refusal to qualify within the meaning of the act." If this conclusion is fairly deducible from the language of the act referred to, and we think it is, it is much more warrantable under the language of our constitution to reach the deduction that the failure to take the oath under the circumstances in this case is not a refusal within the meaning of the language therein used. The relator, we think, has not refused to take the constitutional oath, in the sense of the word as there used, and has not therefore forfeited his right to the office; nor can it be said that he has done or failed to do some act whereby it is expressly provided by statute that by reason thereof the office has become vacant.

Having met all the requirements of the statute and the constitution before proceedings were begun to obtain possession of the office, and there being no adverse claimant or other person entitled to the office, we are of the opinion that the judgment of the district court was right, in conformity with law, and should be affirmed, which is accordingly done.

AFFIRMED.

NORVAL, C. J., dissenting.

I find myself unable to agree to the conclusion of the

majority.  James Duffy was duly elected county judge of
Webster county for the term expiring in January, 1900.
He qualified and discharged the duties of his office.  At
the general election held in November, 1899, Isaac W.
Edson was elected to said office to succeed said Duffy.
Within the time required by law, Edson presented for
approval his official bond with the oath of office thereon
indorsed as prescribed by section 1, chapter 10, Compiled
Statutes.  The bond was not approved or acted upon
prior to the date fixed by law for the beginning of the
official term, owing to the fact that the county board was
not in session until after that time.  The bond of Edson
was approved on January 9, 1900.  On the same day the
county board entered on its records a resolution reciting
that the right of Edson to hold the office having been
questioned because his bond had been approved out of
time, they thereby appointed Edson to the office of
county judge.  Edson immediately executed and filed a
new bond reciting the resolution of appointment, upon
which was indorsed the same oath of office.  This bond
was likewise approved on the same day.  Thirteen days
thereafter, Edson took, subscribed, and filed in the office
of the county clerk, the official oath required by section 1,
article 14, of the constitution.  On January 6, 1900, Duffy
executed and filed a hold-over bond, having indorsed
thereon the official oath similar to the one first taken by
Edson.  This hold-over bond, in obedience to a peremp-
tory writ of mandamus, was approved by the county
board.  Later, Duffy subscribed the constitutional oath
of office, and filed the same with the county clerk of Web-
ster county.  Duffy having refused to surrender the office
to Edson, the latter instituted quo warranto proceedings
against the former to oust him from the office of county
judge and install relator therein.  From a judgment in
the district court in favor of Edson the respondent has
prosecuted a petition in error.

Numerous questions have been argued in the briefs
and at the bar by counsel for the respective parties, and

passed upon by my associates, but the only one which I deem necessary to consider at this time is whether the failure or refusal of relator to take and subscribe the oath designated by the constitution within the time required by law forfeited his right to the office.

Chapter 10, Compiled Statutes, relates to official bonds and oaths, section 1 of which declares that "All state, district, county, precinct, township, municipal, and especially appointed officers, except those mentioned in section 1, article 14, of the constitution, shall before entering upon their respective duties, take and subscribe the following oath, which shall be endorsed upon their respective bonds: 'I do solemnly swear that I will support the constitution of the United States, the constitution of the state of Nebraska, and faithfully and impartially perform the duties of the office of ——, according to law, and to the best of my ability. So help me God.'" It was the foregoing oath, and none other, that was taken by relator before the date fixed by law for the commencement of his term of office. The taking of this oath would suffice were it not for the exception contained in said section 1, chapter 10, and the requirements of the constitution. Section 1, article 14, of the fundamental law reads thus: "Executive and judicial officers and members of the legislature, before they enter upon their official duties, shall take and subscribe the following oath or affirmation, 'I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the state of Nebraska, and will faithfully discharge the duties of —— according to the best of my ability, and that at the election at which I was chosen to fill said office, I have not improperly influenced in any way the vote of any elector, and have not accepted, nor will I accept or receive, directly or indirectly, any money or other valuable thing from any corporation, company, or person, or any promise of office, for any official act or influence. *  *  *' Any such officer or member of the legislature who shall refuse to take the oath herein prescribed, shall forfeit his office. *  *  *."

It is obvious that this section is applicable to the office in question, and on this point we are all agreed. The constitutional provision is mandatory, and of this there is no room to doubt. The taking of the constitutional oath by a county judge elect is a condition precedent to his entering upon the duties of such office. And the statute prescribes the time within which the oath shall be filed in the proper office, as section 5, chapter 10, declares that "Official bonds, with the oath endorsed thereon, shall be filed in the proper office within the times as follows: Of all officers elected at any general election on or before the first Thursday after the first Tuesday in January next, succeeding the election," etc. By this section it became the imperative duty of relator to have taken the constitutional oath and lodged the same in the office of the county clerk of Webster county on or before the first Thursday after the first Tuesday in January, 1900. He wholly failed or refused to do either. The omission of the relator to subscribe to the constitutional oath and file the same in proper time is not a mere irregularity, but was a clear and palpable violation of the fundamental law, which is no more an irregularity than the failure of the legislature to observe the requirements of the constitution in passing laws; and this court has frequently held that statutes enacted in violation of the plain requirements of the constitution are void. By a parity of reasoning, the neglect or refusal of a county judge elect to take and file the oath prescribed by the fundamental law within the time limited therefor forfeits his right to be inducted into office. If he could rightfully subscribe to the oath and file the same one day after the period fixed by statute, then he might do so in a month or year. This is not a suit on an official bond where the constitutional oath was not taken in time and the omission so to do is urged as a defense, but is a proceeding to determine the rights of two persons to hold a public office, and the relator, like a plaintiff in ejectment, must recover on the strength of his own title and can not rely upon the weak-

ness of that of his adversary. The neglect or failure of Edson to take the constitutional oath within the statutory time amounted to a refusal so to do. In the opinion of the majority it is said that the failure of Edson to subscribe the oath prescribed by the constitution was evidently a mistake—an oversight. There is no warrant for this assertion to be found in the record. Edson in his pleadings does not allege that he inadvertently or by mistake took the wrong oath, nor did he attempt to excuse his neglect by testimony given on the trial. He offered no extenuating evidence whatever. His conduct amounted to a refusal to take the required oath. Even though he took the statutory oath under a misconception of the law, it is no valid excuse. He was bound to know the law.

Again, relator abandoned any claim he might have to the office under and by virtue of his election, by the county board declaring that a vacancy existed and appointing relator to fill the same and by his giving a new bond and attempting to qualify. If there existed a vacancy in the office of county judge, the county board was without power to fill the same, since the unexpired term exceeded one year, and could be filled alone by election. Constitution art. 6, sec. 21; *State v. Lansing*, 46 Nebr., 514. The conclusion is irresistible that relator has failed to establish his right to be inducted into the office in question.