WELLS FARGO & CO., RESPONDENTS, v. HARRINGTON
ET AL., APPELLANTS.

(No. 3,819.)

Submitted November 8, 1917. Decided November 26, 1917.)

[169 Pac. 463.]

*Taxation — Corporations—"Franchise"—Constitutional Law — Construction.*

Taxation—Corporations—"Franchise"—When Taxable.

1. *Held*, that the franchise which is made taxable by the Constitution is not the bare right conferred upon corporations to do business

Authorities discussing the question of taxation of corporate franchise, generally, are collated in a note in 57 L. R. A. 34. Specifically as to what are franchises, see page 35 of above note.

in the state, but that special privilege, not enjoyed by citizens generally, which represents something out of which the tax may be realized by forced sale, if necessary, as, for instance, the franchise of street railway, telephone and telegraph, gas and water companies; hence the franchise of an express company under which it enjoys no such special privilege is not subject to taxation.

[As to distinction between franchise and license granted to corporation, see note in **Ann. Cas.** 1916B, 210.]

Constitution—Contemporaneous Construction—Effect.

2.    Contemporaneous construction by the legislature of a constitutional provision raises a strong presumption that such construction, if uniform and long acquiesced in by the people and applied by the officers intrusted with its execution, rightly interprets the provision; and while such construction is not conclusive, it is entitled to most respectful consideration.

*Appeal from District Court, Silver Bow County; J. B. McClernan, Judge.*

INJUNCTION by Wells Fargo & Co. against John J. Harrington, County Treasurer of Silver Bow County, and another. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

*Mr. J. B. Poindexter*, Attorney General, and *Mr. M. F. Canning*, County Attorney of Silver Bow County, for Appellants, submitted a brief; *Mr. Frank Woody*, Assistant Attorney General, argued the cause orally.

Franchises are property and taxable.    (*Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604; *Board of Commrs.* v. *Rocky Mountain N. P. Co.,* 15 Colo App. 189, 61 Pac. 494; *Iron Silver Min. Co.* v. *Cowie,* 31 Colo. 450, 72 Pac. 1067; *Cedar Rapids W. Co.* v. *City of Cedar Rapids,* 118 Iowa, 234, 91 N. W. 1081; *People* v. *State Board of Tax Commrs.,* 174 N. Y. 417, 105 Am. St. Rep. 674, 67 N. E. 69; *Thompson* v. *Schenectady Ry. Co.,* 124 Fed. 274; *Edison Electric I. Co.* v. *Spokane County,* 22 Wash. 168, 60 Pac. 132; *Commercial Electric L. & P. Co.* v. *Judson,* 21 Wash. 49, 57 L. R. A. 78, 56 Pac. 829; *Western Union Tel. Co.* v. *Norman,* 77 Fed. 13; *Henderson Bridge Co.* v. *Commonwealth,* 166 U. S. 150, 41 L. Ed. 953, 17 Sup. Ct. Rep. 532; *San Jose Gas Co.* v. *January,* 57 Cal. 614; *People ex rel. Burke* v. *Badlam,* 57 Cal. 594; *Tay-*

*lor* v. *Secor,* 92 U. S. 575, 23 L. Ed. 663; *Tremont & Suffolk Mills* v. *City of Lowell,* 178 Mass. 469, 59 N. E. 1007; *People ex rel. Platt* v. *Wemple,* 117 N. Y. 136, 6 L. R. A. 303, 22 N. E. 1046; *Crocker* v. *Scott,* 149 Cal. 575, 87 Pac. 102.)

*Messrs. Kremer, Sanders & Kremer,* for Respondent, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

It is a well-settled principle of law that the description of property for taxation must be definite, or, at least, of sufficient definiteness to identify the property taxed, and it is a rule of law that an indefinite description of a franchise renders the assessment and taxation void. ''The description on the assessment-roll of a city, 'the —— company franchise,' is not sufficient.'' (*Southwestern Tel. & Tel. Co.* v. *City of San Antonio,* 32 Tex. Civ. 101, 73 S. W. 859.) The description here is equally indefinite. What franchise is taxed? The franchise to be, or the franchise to do? Or, indeed, is it not the volume of business itself that is taxed? We submit that this is what was attempted to be taxed, and that, in so far as the assessment goes, there was no franchise whatsoever taxed, because there is no such thing as a franchise on intrastate business, the only taxable thing in connection therewith being the business itself.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Wells Fargo & Co., a corporation organized under the laws of Colorado and authorized to do and doing business in this state, having paid to the secretary of state the fees required as a condition precedent to doing business here, and having paid its annual license taxes and taxes upon its tangible property, brought this action to restrain the collection of a further tax upon a valuation of $30,000 fixed by the assessor of Silver Bow county upon the company's franchise on all intrastate business done by it in this state. The district court overruled a demurrer to the complaint, and the county and its treasurer, declining to

plead further, suffered judgment to be entered against them, and appealed.

The indorsement on the assessment-roll must be held to indicate an intention on the part of the assessor to describe the franchise of this company and to fix the valuation thereof upon the basis of the amount of intrastate business transacted by it, and this presents for our determination the question: Does the plaintiff corporation exercise or enjoy a franchise in this state, as the term is used in the Constitution and statutes?

The subject—taxation—is considered in Article XII of our state Constitution. All property is subject to taxation, except such public and *quasi*-public property as is specially exempted and such other property as may be exempt by law. (Sec. 1.) The power to tax corporations or corporate property shall never be relinquished, and every corporation in this state or doing business herein shall be subject to taxation on all real or personal property owned or used by it, unless it belongs to a class of property which is exempt. (Sec. 7.) All property shall be assessed in the manner prescribed by statute or by the Constitution. (Sec. 16.) Section 17 defines property to include moneys, credits, bonds, stocks, franchises, *etc.*

The question, Is a franchise granted by this state subject to taxation? is not open to discussion. The Constitution answers [1] it in the affirmative, and no amount of judicial learning exhibited in decided cases can add to or subtract from that determination. But what is meant by a "franchise," as that term is employed in our Constitution? That it is not a word to which is attached a limited, precise, well-understood and generally accepted meaning is evidenced by the fact that in Words and Phrases (first edition and second edition) twenty-two pages are given over to definitions of the term. In its broad significance the word is used frequently to denote a right or privilege conferred by law, and in this sense we speak of the elective franchise as a privilege enjoyed by every one of our citizens who possesses the qualifications prescribed by law. The right to exist as a corporation in this state is a franchise or

privilege conferred upon any individuals who meet the requirements of the statutes.   So, likewise, the authority to conduct business in this state as a corporation is a franchise, and in this sense every corporation enjoys a franchise, even though it may be formed for religious, benevolent, charitable, educational, literary, scientific or social purposes, or for the promotion of painting, music or other fine arts.   But the authority to engage in any of these undertakings is not peculiar to corporations. Every individual may pursue the same lines of endeavor to the same extent without permission from the state, and enjoy all the rights, privileges and benefits accorded to the corporation.   Other illustrations might be drawn of the use of the term in this comprehensive sense.   The word also has a more restricted meaning, to denote a special privilege conferred upon certain individuals, associations and corporations, not enjoyed by the citizens generally.   For example: Under its franchise a street railway may lay its tracks upon and operate its cars over public roads, streets and alleys, and occupy such thoroughfares to the exclusion of the public, to the extent necessary to the conduct of its business. A telegraph or telephone company under its franchise may use such public places for its pole lines and wires; and a gas or water company, by virtue of the like authority, may tear up the streets and other public roads, and to that extent impede public travel, for the purpose of laying, repairing, or renewing its mains.   These examples might be multiplied almost indefinitely, for such franchises are about as varied as the purposes for which corporations may be organized; but the foregoing suffice to illustrate a character of public privilege or franchise not conferred upon or enjoyed by the public generally.

If the bare privilege of doing business as a corporation is a franchise, within the meaning of that term as employed in the Constitution, then every corporation in this state is taxable upon its franchise, whether it be engaged in religious or charitable work, or in buying and selling dry-goods, groceries and other wares, in the printing or publishing business, or in any other one of the numerous occupations mentioned in section 3808, Revised

Codes, unless its franchise as such is devoted exclusively to some purpose mentioned in section 2499, Revised Codes.

But this court may not arbitrarily formulate a definition of the word "franchise" and determine this appeal accordingly. The duty is laid upon us to ascertain, if possible, the meaning which the framers of the Constitution intended should be attached to the term. In an effort to carry into effect the mandates contained in Article XII of the Constitution, the legislative assembly in 1891 availed itself of the first opportunity presented after the Constitution was adopted to enact a general revenue measure to meet the changed conditions incident to the admission of the state. The Act was very comprehensive in its terms, contained 206 sections, and treated of every phase of the assessment of property and the imposition and collection of taxes. (Laws 1891, pp. 73–129.) Section 11 provides for the assessment of the property—including franchises—of railroads operated in more than one county, and follows closely the language of the Constitution. Section 26 provides that the *personal property* of express companies must be listed and assessed in the county, town or district where such property is usually kept. Section 27 provides for the assessment of the personal property and *franchises* of gas and water companies, section 29 for the assessment of street railways and their *franchises,* and section 30 for the assessment of railroads operated in one county only, telegraph, telephone and electric light lines and their *franchises,* canals, ditches and flumes. These several provisions were carried forward into the compilation of 1895 (Pol. Code, sec. 3719) without change, except that after the word "flumes," in section 30, there was added "and the franchises of the same," and with this change they were brought into the revision of 1907 (sec. 2529) and constitute the law upon the subjects to-day.

It is strikingly noticeable that during all these years, in all of our legislation, though specific reference is made to the taxable property of an express company, no mention whatever is made of the franchise of an express company; whereas, during all of the period the franchise of every railroad, street railway, gas,

water, telegraph, telephone, electric light, canal, ditch and flume company is singled out as a species of property made subject to taxation.  For this discrimination there must have been some excuse or justification, and in our opinion it is to be sought in the character of the business itself.  An express company, in the conduct of its business, enjoys no greater privilege in this state than a messenger boy who carries packages from one place to another for hire.  The expressman, whose outfit consists only of a horse and wagon, and who moves baggage, furniture and like articles for hire, is engaged in the express business and enjoys all the rights and privileges granted to Wells Fargo & Co. An express company has no greater rights in the streets, roads and other public places than the humblest pedestrian.  Anything that it can do the private citizen can do to the extent of his capacity.  Every other one of the corporations enumerated in the Revenue Act enjoys some special privileges and advantages which the citizens generally do not possess.  In other words, the legislature has distinguished the privileges conferred by the government upon the people generally, from those special privileges conferred upon certain persons, associations and corporations, and has designated a privilege of the latter class by the term "franchise."

It is the contention of appellants that every foreign corporation, admitted to do business in this state, is authorized by section 4420, Revised Codes, to exercise the power of eminent domain, and that this plaintiff enjoys that special privilege, which is not conferred upon the citizens generally; but the statute does not so provide.  It only gives to such foreign corporation the same right in this behalf as is enjoyed by the domestic corporation engaged in the like business; and counsel have failed to indicate wherein section 7331, Revised Codes, authorizes a domestic corporation engaged in the express business to invoke the power of eminent domain to any extent or for any purpose, not open to a private individual.

Section 18, Article XII, provides: "The legislative assembly shall pass all laws necessary to carry out the provisions of this

Article." As we have seen, the legislature endeavored to carry this mandate into execution by the enactment of our revenue laws, in which the term "franchise" is construed to mean a special privilege conferred by the state directly or indirectly to do or perform certain acts or things which, in the absence of the special privilege, could not be done, and which special privilege the citizens generally do not enjoy by common right. This construction was placed upon the language of the Constitution, substantially contemporaneous with its adoption, has been continued throughout the twenty-six years since the enactment of the statute, has been acquiesced in by the people and applied by the revenue officers, constituting a part of the executive branch of the government, and is indicative of the public policy of the state.

In providing for taxation of property, the obvious purpose was to raise revenue, and therefore it is self-evident that, when the Constitution employs the term "franchise," it refers to something which has a practical money value, and out of which the tax may be realized by forced sale, if necessary. Section 2502, Revised Codes, provides: "All taxable property must be assessed at its 'full cash value.'" Section 2501 defines the terms "value" and "full cash value" to mean "the amount at which the property would be taken in payment of a just debt due from a solvent creditor." The bare privilege granted to a corporation to do business is in the nature of a personal privilege. It cannot be sold or transferred by the corporation; neither can it be seized or sold under legal process. But the franchise of a corporation—meaning thereby the special privileges essential to its successful operation in the particular business in which it is engaged—is a valuable property right, which may be sold by the corporation and is subject to seizure and sale under execution. To illustrate: The privilege conferred by the state upon a corporation to furnish gas for light and other purposes would be of no practical value, if the corporation could not obtain access to the streets and alleys of any city for the purpose of laying its mains without resort to eminent domain

proceedings, and yet such privilege might be denominated a "franchise" within the more comprehensive definition of the term. On the other hand, the privilege conferred by a municipality upon a corporation to use its streets, alleys and other public places for the purpose of laying its mains and supplying gas to its inhabitants is a valuable privilege, which forms a part of the aggregate of its property and may be sold by the corporation or under legal process. Aside from other considerations, this distinction alone might have justified the legislature in limiting the term "franchise" to special privileges of the latter class. This legislative interpretation of the language of the Constitution excludes the idea that the term "franchise" was intended to include the bare privilege enjoyed by every corporation in this state to conduct its business, without reference to the character of its business or the advantages accruing from the privilege.

There are decided cases which hold that the bare privilege of doing business as a corporation is property subject to taxation; but, in our opinion, the courts so holding confuse the terms "franchise" and "goodwill." The goodwill of a business is not dependent upon the fact that the business management is a corporation. It attaches to business conducted by a private individual or a partnership, as well as to corporate business, and is the principal element which enhances the value of a business over and above the value of the property employed in it.

The Constitution imposes upon the legislature the duty to provide the means for carrying into effect the provisions relating [2] to taxation, and it is a general rule that contemporaneous construction by the department of government specially delegated to carry out a provision of the Constitution raises a strong presumption that such construction, if uniform and long acquiesced in, rightly interprets the provision. (Cooley's Constitutional Limitations, 7th ed., p. 102.) While such construction is not conclusive upon the courts, it is entitled to the most respectful consideration (*Northern Pac. Ry. Co.* v. *Brogan,* 52 Mont. 461, 158 Pac. 820), and in this instance it furnishes the

only key to the intention of the framers of the Constitution in employing the term "franchise" in Article XII above.

It is a historical fact that, of the members of the legislative assembly of 1891 which passed our revenue law, eleven of them were active members of the constitutional convention, with the best opportunity to know and appreciate fully the intention manifested by the Constitution itself; and this is a factor which the supreme court of the United States deemed worthy of some consideration. (*Martin* v. *Hunter's Lessees*, 1 Wheat. 305, 4 L. Ed. 97.) In the absence of any evidence that a different meaning was intended, we accept the construction placed upon the language of Article XII by the legislature as indicating the definition of the term "franchise" intended by the framers of the Constitution.

The legislature has imposed upon every express company doing business in this state an annual license tax graduated according to the amount of its intrastate business (sec. 2774, Rev. Codes), and, if such company is a foreign corporation, it must also pay, for the privilege of entering this state to do business, the fees prescribed by section 165, Revised Codes, as modified by Chapter 37, Laws of 1915. In addition, all of its tangible property is liable to taxation under section 26 of the Revenue Act, now section 2525, Revised Codes. The complaint alleges that plaintiff has paid all of these taxes and charges, and the demurrer admits that these allegations are true.

It is our conclusion that Wells Fargo & Co. does not enjoy or exercise any such special privilege in this state as can be denominated a "franchise," as that term is employed in the Constitution, and for this reason the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.