STATE EX REL. WALLACE, RELATOR, v. CALLOW, RESPONDENT.

(No. 6,094.)

(Submitted January 12, 1927. Decided February 18, 1927.)

[254 Pac. 187.]

*Quo Warranto—County Commissioners—Official Oaths and Bonds—Failure to File Within Prescribed Time—Vacancy—Constitution—Statutes and Statutory Construction—Estoppel—Pleading and Practice.*

*Quo Warranto*—Supreme Court will Take Original Jurisdiction, When.
1. The supreme court will take original jurisdiction of a proceeding in *quo warranto* brought by one elected to the office of county

[78 Mont. 308.]

commissioner but which office was filled by appointment for relator's failure to file his official bond within the time required by law, where the emergencies appear to it sufficient to warrant that course.

Same—Complaint—Striking of Immaterial Allegations.

2. Since relator is presumed to know the law relative to the steps necessary to be taken by him to qualify for the office to which he was elected, allegation in his complaint in a *quo warranto* proceeding that the certificate of election sent him did not advise him as to how and when he should qualify, *held* immaterial and ordered stricken, the law not requiring the giving of such information.

Same.

3. Allegations in relator's complaint at whose suggestion and for what reason he sent his official bond to the district judge for approval, or what the conclusion reached by said judge was resulting in the rejection of the bond, *held* immaterial and ordered stricken from the complaint.

Same—County Commissioners—Official Bonds—Sufficiency—Complaint—Classification of Counties.

4. Complaint in *quo warranto* proceedings instituted by one claiming the office of county commissioner by election, alleging that the district judge first approved his official bond but thereafter withdrew his approval on the sole ground that the date of the commencement of relator's term was incorrectly stated therein, *held* sufficient as against a demurrer interposed on the ground that it did not set forth the sufficiency of the bond by not alleging the class of counties into which the particular county fell; the judge having approved the bond and then rejected it for the reason given was a determination of its sufficiency otherwise.

Same—Estoppel—What Does not Constitute.

5. Where the day before the district judge declared the office of county commissioner vacant for failure of the commissioner-elect to file the proper official bond, the relator to the judge's knowledge had filed a new bond, the fact that relator had prior thereto written a letter to the judge stating that he was an applicant for appointment to the vacancy created by his failure to properly qualify did not estop him from asserting his right to the office under *quo warranto* proceedings.

Same—Official Oath — Constitutional Provision Mandatory — Filing — Statutory Provision Valid.

6. Section 1 of Article XIX of the Constitution, requiring every public officer to take the official oath therein prescribed is self-executing, mandatory and conclusive upon the legislature; but it not being prohibited from requiring the filing of the oath, it could, as it did by section 432, Revised Codes of 1921, prescribe that such oath should be filed, without thereby rendering the section unconstitutional.

Constitution—Legislative Construction Entitled to Respectful Consideration.

7. While legislative construction of constitutional provisions is not binding upon the courts, such construction placed upon them for many years in the enactment of statutes is entitled to respectful consideration, and if uniform and long acquiesced in by

---

7. See 25 R. C. L. 1048.

the people and public officers, raises a strong presumption that the construction rightly interprets the provisions.

Same—Statutes—Constitutionality—Rule.

8. An Act of the legislature can only be declared unconstitutional when its unconstitutionality is shown beyond reasonable doubt.

Statutory Construction—Statute Adopted from Another State—Rule.

9. The rule that the adoption of a statute from another state carries with it the construction placed upon it by the courts of such state prior to its adoption will be followed in this state only when that construction appeals to the supreme court as based upon sound reasoning consonant with the intention of the legislature in enacting it.

*Quo Warranto* — Official Oath — Statutory Provision Directory — Official Bond—Filing—Statute Mandatory.

10. *Held,* that section 432, Revised Codes of 1921, providing that where a different time is not prescribed by law, a public officer shall within thirty days after he has notice of his election or appointment take, subscribe and file his oath is directory and not mandatory; but that the provision of section 468, relative to the filing of the official bond within the time prescribed for filing the oath, is mandatory.

Same—Official Bonds—Compliance With Statute Requisite.

11. Where an officer relies upon delivery of his bond as the basis of induction into office, he must show full compliance with the statute, which includes the presentation for approval and approval duly evidenced as required by statute, and there can be no legal delivery thereof until it is approved by the proper officer; where, however, the officer-elect is prevented from fully complying with the law in that regard by the wrongful act of the approving officer or the person with whom the bond must be filed, he is entitled to the office.

Same — County Commissioners — Failure to have Bond Approved — Vacancy in Office.

12. Where a county commissioner-elect, after refusal of the district judge to approve his bond, filed a new one but did not present it to the judge for approval, there was no legal filing of it at any time and the action of the judge in declaring a vacancy under subdivision 9 of section 511, Revised Codes of 1921, was correct.

Same—County Commissioners—Approval of Bonds—Time—Statutes.

13. *Held,* that section 4455, Revised Codes of 1921, requiring *inter alia* the furnishing of an official bond by county commissioners before assuming office, and imposing upon the district judge the duty of examining such bond on the first day of each term of court, is not open to the construction that county commissioners may file their bonds regardless of approval, and that the judge at the next session of court must approve them if sufficient, such a construction being inconsistent with the provisions of sections 466 to 476, *Id.,* having to do generally with the giving of official bonds on qualifying for county office.

Statutory Construction—Parts, Titles, *etc.,* of Codes to be Construed Together and Harmonized.

14. The different parts, titles, *etc.,* of the Codes are to be construed together as one complete and harmonious system, and

8. See 6 R. C. L. 75.
9. See 25 R. C. L. 1074.

[78 Mont. 308.]

where one part of a statute or of the law on a subject is susceptible of two constructions, and the language of another part is clear and definite and is consistent with one of such constructions and opposed to the other, that construction must be adopted which will render all clauses harmonious.

*Quo Warranto*—County Commissioners—Failure to File Proper Official Bond Within Prescribed Time—Vacancy—Power of District Judge to Fill.
　15. *Held,* under section 511, Revised Codes of 1921, that refusal or neglect of an officer-elect to file his bond within the time prescribed creates a "vacancy" in the office, and that in the case of a county commissioner the district judge had authority, under section 4454, upon the expiration of the thirty-day period provided for the filing of a bond, to declare the office vacant and make a prospective appointment to fill the vacancy when it did occur, to-wit, at the commencement of the new term.

---

[1]　Quo Warranto, 32 Cyc., p. 1429, n. 24; p. 1450, n. 92.
[2, 3]　Elections, 20 C. J., sec. 264, p. 205, n. 15 New. Evidence, 22 C. J., sec. 85, p. 148, n. 67. Quo Warranto, 32 Cyc., p. 1451, n. 95.
[4]　Officers, 29 Cyc., p. 1387, n. 38; p. 1418, n. 94. Quo Warranto, 32 Cyc., p. 1451, n. 95.
[5]　Officers, 29 Cyc., p. 1419, n. 98 New. Pleading, 31 Cyc., p. 208, n. 80.
[6]　Constitutional Law, 12 C. J., sec. 127, p. 735, n. 40. Counties, 15 C. J., sec. 97, p. 450, n. 45, 46. Officers, 29 Cyc., p. 1376, n. 23.
[7]　Constitutional Law, 12 C. J., sec. 66, p. 715, n. 84; sec. 67, p. 715, n. 88.
[8]　Constitutional Law, 12 C. J., sec. 222, p. 797, n. 34.
[9, 10]　Officers, 29 Cyc., p. 1388, n. 44, 45; Statutes, 36 Cyc., p. 1154, n. 81; p. 1156, n. 90.
[11]　Officers, 29 Cyc., p. 1387, n. 33.
[12]　Counties, 15 C. J., sec. 97, p. 450, n. 48. Officers, 29 Cyc., p. 1388, n. 41.
[13]　Counties, 15 C. J., sec. 97, p. 450, n. 46.
[14]　Statutes, 36 Cyc., p. 1128, n. 54; p. 1120, n. 29; p. 1132, n. 78.
[15]　Counties, 15 C. J., sec. 98, p. 451, n. 59 New. Officers, 29 Cyc., p. 1401, n. 50 New. Statutes, 36 Cyc., p. 1103, n. 96; p. 1106, n. 29; p. 1116, n. 3, 6; p. 1125, n. 38 New. Vacant, 39 Cyc., p. 1103, n. 48 New.

Original application for writ of *quo warranto* by the State, on the relation of W. A. Wallace to determine right to the office of county commissioner of Lincoln county. Proceeding dismissed.

*Mr. L. A. Foot,* Attorney General, *Mr. B. J. McIntire* and *Messrs. Walchli & Korn,* for Relator, submitted an original and a supplemental brief; *Mr. Hans Walchli* argued the cause orally.

*Mr. Henry C. Smith, Mr. Heath Youell* and *Mr. H. G. Pomeroy,* for Respondents, submitted an original and a supplemental brief; *Mr. Smith* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original application for writ of *quo warranto* by the state, on the relation of W. A. Wallace, against F. B. Callow, the attorney general consenting and joining therein.

Counsel for relator made application to this court for leave to file his complaint tendered, and showed to the court his reasons why he considered it necessary that this court assume original jurisdiction in the cause. Deeming the reasons urged sufficient to warrant such action, but being willing that the defendant be heard on the subject, this court directed that the defendant be notified of said application and caused to be served with an order to show cause why leave to file the complaint should not be granted, which order was made returnable on January 24, 1927, at the hour of 10 A. M. At the time designated in the order, defendant appeared by counsel, who agreed that, pursuant to the usual practice, the entire matter should be heard and submitted at that time. Counsel thereupon filed herein, to be argued and considered in their logical order (1) a motion to dismiss the proceeding; (2) a motion to strike certain portions of the complaint; (3) a demurrer to the complaint; and (4) defendant's answer to the complaint.

1. The motion to dismiss is made upon the ground that the [1] subject matter of the proceeding is not such as, under the law and the rules of this court, should come within the original jurisdiction of this court. We will consider this motion as defendant's showing of cause why the complaint should not be filed.

It clearly appeared from the complaint tendered that the facts alleged disclose a proper subject for *quo warranto* proceedings (sec. 9576, Rev. Codes 1921; *State ex rel. Brooks* v. *Fransham,* 19 Mont. 273, 48 Pac. 1; *State ex rel. Boyle* v. *Hall,* 53 Mont. 595, 165 Pac. 757), and we deem the exigencies of the case as shown sufficient to warrant us in permitting the short cut, sought by the relator, to be taken. The motion is therefore overruled and the tendered complaint ordered filed.

The allegations of the complaint, necessary to our consideration of all of the questions submitted, are substantially as follows—those allegations against which the motion to strike is directed are inclosed in brackets:

It is alleged in paragraph 3 that the relator was duly elected to the office of county commissioner of Lincoln county, at the general election held on November 2, 1926, and that on November 13 he received his certificate of election [but which certificate of election merely certified and notified the same W. A. Wallace that he had received the highest number of votes for said office and was duly elected thereto, and contained no notice or information whatsoever requiring said W. A. Wallace to qualify or specifying the time within which he should qualify for said office]. It is then alleged that relator took and subscribed the required oath of office and presented the same, with a bond duly executed by himself and the Maryland Casualty Company on December 6, 1926, on December 14, 1926. Copies of the oath and of a second bond, hereinafter mentioned, were attached to the complaint, which alleged that the first bond was in all respects the same as the second except as to date, and that it described the term of office as commencing on January 1, 1927, instead of January 3. Paragraph 4 contains the allegation that on being presented with said oath and bond, as aforesaid, the said county clerk instructed the said W. A. Wallace to forward said oath and bond to Hon. C. W. Pomeroy, at Kalispell, Montana, for approval, the said C. W. Pomeroy be-

ing then and there the duly elected, qualified and acting district judge of the Eleventh judicial district of the state of Montana, in and for the county of Lincoln, and that pursuant to said direction, the said W. A. Wallace did then and there, on the fourteenth day of December, forward said oath and bond to said judge for approval; that they were received by said judge on the fifteenth day of December and the bond duly approved on said day in chambers, the judge indorsing on said bond, "Approved this fifteenth day of December, 1926, C. W. Pomeroy, Judge," but that, after making such approval, said judge noticed that the bond described the term as commencing January 1, instead of January 3, and thereupon struck out and canceled his approval "for the, and giving as his only, reason" the error in description of the term. It is next alleged that thereupon relator · secured the second bond mentioned above, and on December 20, 1926, filed his oath and the new bond with the clerk of the district court.

Paragraph 6 of the complaint alleged that on December 21, 1926, the judge [having knowledge of the filing of the new bond and of said oath on the twentieth day of December, 1926, in said office, as above alleged, but concluding that said qualification by said W. A. Wallace was too late] made and entered an order in open court declaring the office vacant by reason of the alleged failure of relator to qualify and appointed the defendant to fill the vacancy.

It is alleged that the defendant presumed to qualify and enter upon the discharge of the duties of the office, and that he and the other members of the board refused to permit relator; that relator did not know that the statute ostensibly required him to qualify within thirty days; and that he is willing and desirous of entering upon the duties of his office. Relator prays that defendant be adjudged guilty of usurping, intruding into and unlawfully holding the office, and that relator be adjudged entitled thereto.

2. On motion to strike. (a) The relator is presumed to [2, 3] know the law, and ignorance thereof cannot excuse him from failure to comply therewith. (*State ex rel. Rowe* v. *District Court*, 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103.) It is therefore immaterial whether he had notice to qualify or of the time within which he should qualify; further, the law does not require any such information to be given in the certificate of election. (Sec. 797, Rev. Codes 1921.) The motion will therefore be granted as to the matter inclosed within brackets appearing in paragraph 3 of the complaint, and the same will be stricken.

(b) It is also immaterial for what reason, or at whose suggestion, the bond was sent to Judge Pomeroy for approval. That portion of paragraph 4 referring to such reasons will therefore be stricken from the complaint. However, the recitation of facts showing the submission of the bond to Judge Pomeroy and the action taken by him is material, and as to such matter the motion is denied.

(c) Again, the bracketed clause of paragraph 6 contains matter both material and immaterial; it is immaterial what the conclusion reached by Judge Pomeroy may have been; the action taken, with his reason therefor, is all that we have to consider. The phrase, "but concluding that said qualification by said W. A. Wallace was too late," is stricken.

But the knowledge of the judge that a bond and oath had been filed on December 20, 1926, at the time he declared the office vacant on the following day, is material, as will hereafter be seen, and the motion will be denied as to the allegation of such knowledge.

3. The only question raised on the demurrer is that the [4] complaint does not allege facts showing the sufficiency of the bond tendered, and particularly that the amount of the bond was sufficient in that it does not allege in what class Lincoln county belonged in 1926.

"For the purpose of * * * fixing the penalties of officers' bonds," the counties of the state are divided into seven classes, according to the taxable value of property therein (sec. 4741, Rev. Codes 1921), and the class in which each county falls must be declared by the board of county commissioners in each even-numbered year. (Sec. 4742, *Id.*) Under the provisions of section 466, *Id.*, commissioners in counties of the first, second, third and fourth classes must give bonds in the sum of $5,000, in the fifth and sixth classes, $3,000, and in the seventh class, $2,000.

But the sufficiency of a bond is a question for determination by the approving officer, and, when relator's bond was submitted to Judge Pomeroy on December 14, 1926, it was the duty of the judge to ascertain the then class of the county and to not approve the bond if it was not in the amount required by law, and when the judge approved that bond and thereafter withdrew his approval upon the sole ground that the date of the commencement of the term was incorrectly stated, he determined that the bond was otherwise sufficient. By alleging those facts, the complaint sufficiently alleged the sufficiency of the bond tendered to Judge Pomeroy, and by alleging that the new bond was in all particulars the same as the first bond, with the exception of the dates mentioned, it alleged that a sufficient bond was filed with the clerk of the district court on December 20, 1926, if that filing was sufficient. The demurrer is therefore overruled.

4. While the answer joins issue as to certain facts alleged in [5] the complaint, it was agreed in open court that the defendant waived proof of all facts alleged, with the exception of the class in which Lincoln county fell. This question is disposed of above, and therefore the answer presents but questions of law as to the rights of the respective parties under the facts presented in the pleadings and the affirmative defense pleaded as an estoppel. This defense is based upon a letter

written by the relator on December 17, 1926, three days before he filed his oath and bond with the clerk of the district court. It is addressed to and was received by Judge Pomeroy, and reads as follows: ''As I understand it, there is a vacancy in the office of county commissioner, for this county, and, instead of running before the people, I ask an appointment to fill the vacancy above mentioned from our district judge. I failed by one day to properly qualify after receiving my certificate of election as county commissioner. I very respectfully ask your consideration of my appointment to fill the vacancy. If this application meet with your approval, I shall appreciate the same.''

Defendant contends that by his letter relator consented that the judge should declare a vacancy and appoint a commissioner, and having ''attempted to make the action of the court in declaring a vacancy 'an active instrument for his own benefit,' he cannot now be heard to complain of the very act which he petitioned the judge to perform,'' citing *Richli* v. *Missoula Trust & Sav. Bank,* 54 Mont. 127, 168 Pac. 41. However, the only allegation in the answer relative to paragraph 6 of the complaint, is that: ''Respondent admits that on the twenty-first day of December, 1926, C. W. Pomeroy, as district judge, duly, legally and regularly made and entered an order in open court of said county of Lincoln declaring a vacancy in said office of county commissioner, and that a copy of said order is attached to the complaint.'' The answer contains no general denial. The allegation quoted, therefore, merely puts in issue the legality of the action of Judge Pomeroy, and, by failing to deny, admits the allegation that Judge Pomeroy had knowledge at the time he made the order that relator had, three days after writing the letter and the day before the order was made, filed with the clerk of the court his bond and oath.

If the writing of the letter constituted consent to the action of the court, the consent was withdrawn by attempting to

qualify before action thereon was taken, and, as the court had knowledge of the later action by relator, it cannot be said to have acted on the consent or suggestion contained in the letter. The action of the relator merely evidenced a desire on his part to be appointed in the event the court declared a vacancy while he was still attempting to qualify pursuant to election.

Under all of the circumstances shown, we hold that the relator is not estopped by his action from asserting his right to the office in this proceeding.

5. The action of the judge was based upon his determination [6] that relator had failed to qualify within the time prescribed by law, and this determination was in turn based upon the provisions of section 432 of the Revised Codes of 1921, to-wit: ''Whenever a different time is not prescribed by law, the oath of office must be taken, subscribed, and filed within thirty days after the officer has notice of his election or appointment, or before the expiration of fifteen days from the commencement of his term of office, when no such notice has been given''; and section 511 respecting vacancies.

The record discloses that relator received notice of his election on the thirteenth day of November and did not *file* his oath of office until December 20, 1926. Counsel for relator contends that this section (432) is unconstitutional as in contravention of section 1 of Article XIX of the Constitution, which reads in part as follows: ''All officers, * * * shall, before they enter upon the duties of their respective offices, take and subscribe the following oath'': This section, in requiring every public officer to take the constitutional oath, is self-executing (*State ex rel. Scollard* v. *Board of Examiners for Nurses*, 52 Mont. 91, 156 Pac. 124), and in requiring that every such officer shall both take and subscribe such oath *before* entering upon the duties of his office, the Constitution has spoken and the legislature is prohibited from enunciating a contrary rule, as the provisions of the Constitution are manda-

tory and prohibitory (sec. 29, Art. III), and its declarations
with reference to subjects upon which it presumes to speak are
conclusive (*State ex rel Pierce* v. *Gowdy,* 62 Mont. 119, 203
Pac. 1115; *State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 77
Pac. 299; *Cruse* v. *Fischl,* 55 Mont. 258, 175 Pac. 878; *In re
Weston,* 28 Mont. 207, 72 Pac. 514).

But it will be noted that the constitutional provision does
not require the *filing* of the oath; while an oath taken and
subscribed and laid away in the private archives of the officer
can certainly not be effective for any purpose, and, in this par-
ticular, the section cannot be said to be self-executing. As
the Constitution does not therefore attempt to provide the full
procedure to be taken with reference to the oath, and what it
does prescribe would not be effective without the enactment of
further requirements by the legislature, it must be that the
framers of the Constitution intended only to declare that no
officer should be permitted to assume the duties of his office
unless, at some time prior thereto, he had taken and subscribed
the oath therein prescribed, and did not prohibit the legisla-
ture from fixing a reasonable time within which such officers
might qualify by taking, subscribing, *and filing* the required
oath.

The legislative department of this state clearly so construed
[7] the constitutional provision, for which we have had a
statutory provision identical with the constitutional declaration
since 1876 (sec. 3, p. 90, Laws 1876, now sec. 430, Rev. Codes
1921), that body proceeded to enact section 432 in 1907 (sec.
1, Chap. 1, Laws 1907), without any reference to, or attempt
to amend, the existing section on the subject, and this has been
the construction placed upon the provision for the last twenty
years. While legislative constructions of constitutional pro-
visions are not binding upon the courts, such a construction
for many years placed upon such provisions in enacting stat-
utes is entitled to respectful consideration, and, if uniform and

long acquiesced in by the people and by officers, raises a strong presumption that such construction rightly interprets the provision. (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386; *Northern Pac. Ry. Co.* v. *Brogan,* 52 Mont. 461, 158 Pac. 820; *McClintock* v. *City of Great Falls,* 53 Mont. 221, 163 Pac. 99; *Wells, Fargo & Co.* v. *Harrington,* 54 Mont. 235, 169 Pac. 463; *State ex rel. Judith Basin County* v. *Poland,* 61 Mont. 600, 203 Pac. 352.)

An Act of the legislature can only be declared unconstitu-
[8] tional when its unconstitutionality is shown beyond **a** reasonable doubt. (*State ex rel. Lyman* v. *Stewart,* 58 Mont. 1, 190 Pac. 129; *State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841; *Martien* v. *Porter,* 68 Mont. 450, 219 Pac. 817.)

The construction seems reasonable, and we cannot say that section 432 is shown to be unconstitutional "beyond reasonable doubt." A like construction was placed upon a similar constitutional provision by the legislature of Maryland prior to 1856 by the enactment of a statute similar to our section 432, and its enactment seems to be unquestioned by the courts of that state. (*Harwood* v. *Marshall,* 9 Md. 83.)

6. Relator next contends that, if constitutional, section 432
[9, 10] is directory only; while defendant asserts that the section is mandatory and failure to comply therewith *ipso facto* works a forfeiture of the office, relying upon decisions of California handed down before we adopted the statute from that state. (*People* v. *Taylor,* 57 Cal. 620; *People* v. *Perkins,* 85 Cal. 509, 26 Pac. 245.) However, the rule that the adoption of a statute from another state carries with it the construction placed upon it by the courts of such state prior to adoption will be followed in this state only when that construction appeals to us as based upon sound reasoning and consonant with the intention of the legislature in enacting the statute. (*Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac.

197; *State ex rel. Goodman* v. *Stewart,* 57 Mont. 144, 187 Pac. 641.)

If we were to adopt the rule announced in California, great confusion might result and injustice be done to both the people and the officers-elect; for example, an officer who might qualify after the statutory period with full knowledge and consent of the proper officials of the state or county, and thereafter enter upon the discharge of the duties of the office and discharge those duties for months, might, at any time during his term of office, be ousted on the sole groud that, technically, he did not comply with the law before assuming the duties of the office. We do not believe that the legislative assembly intended any such result to flow from a failure to file within the time designated, and we find that the California rule is contrary to the weight of authority and well-reasoned decisions in those states having statutes similar to our own, wherein it is not declared that such default *ipso facto* works a forfeiture of the office. Thus Mr. Mechem, in his valuable work on "Public Offices and Officers," sections 265, 266, says: "These provisions as to time, though often couched in most explicit language, are usually construed to be directory only and not mandatory;  *  *  *  a failure to give bond within the time prescribed does not, therefore, *ipso facto* work a forfeiture,  *  *  *  even though the statute expressly provides that upon a failure to give the bond within the time prescribed, the office shall be deemed vacant and may be filled by appointment."

Mr. Mechem cites authorities from many jurisdictions; in addition thereto, see Throop on Public Officers, sec. 173; *State ex rel. Lysons* v. *Ruff,* 4 Wash. 234, 16 L. R. A. 140, 29 Pac. 999; *Cawley* v. *People,* 95 Ill. 249; *Board of Commrs.* v. *Johnson,* 124 Ind. 145, 19 Am. St. Rep. 88, 7 L. R. A. 684, 24 N. E. 148; *State ex rel. Lease* v. *Turner,* 111 Ohio St. 38, 144 N. E. 599 (1924), in which latter case a large number of like decisions is assembled.

Following the great weight of authority and what we believe to be sound public policy, we hold that the statute is directory and not mandatory.

7. However, there can be no question but that the requirement that such an officer make and file his bond before assuming the duties of his office is mandatory. Such a bond becomes operative only on delivery (*People* v. *Van Ness,* 79 Cal. 84, 12 Am. St. Rep. 134, 21 Pac. 554), and, while it is held in this state that where there is such acceptance and delivery of a bond filed without approval, neither the principal nor sureties can evade liability for the acts of the principal who has entered upon the discharge of his office (*Stabler* v. *Adamson,* 73 Mont. 490, 237 Pac. 483). This holding is based upon a statute declaring such liability (sec. 484, Rev. Codes 1921), and upon the rule that a party cannot take advantage of his own wrong.

On the other hand, where an officer relies upon delivery of [11] his bond as the basis of induction into office, he must show full compliance with the statute, which includes the presentation for approval and approval duly evidenced as required by statute (*Sacramento County* v. *Bird,* 31 Cal. 66), and there can be no legal delivery of a bond until it is approved by the proper officer (sec. 474, *Id.; People* v. *Van Ness,* above; *People* v. *Kneeland,* 31 Cal. 288). The only exception to this rule is that where the officer-elect has done all that he can toward qualifying and is prevented from fully complying with the law by the wrongful act of the approving officer or the person with whom the bond must be filed, he cannot be deprived of his office. (*Jones* v. *State,* 7 Mo. 81, 37 Am. Dec. 180; *People* v. *Fitch,* 1 Cal. 519; *Duffy* v. *State,* 60 Neb. 812, 84 N. W. 264; *Ross* v. *Williamson,* 44 Ga. 501; *State* v. *Hadley,* 27 Ind. 496; *Flatan* v. *State,* 56 Tex. 93.)

This exception cannot avail the relator, as it is admitted that, having corrected the error pointed out by the district judge, he

did not thereafter present his bond to the judge for approval;
[12] he did not do "all that he could have done." Had he
presented the bond to the judge for approval and, on the re-
fusal of the judge to approve it on the ground that it was pre-
sented too late, then filed the bond, as he did, he might have
brought himself within the exception, but we cannot presume
that the judge would have refused to approve the bond if pre-
sented. While the bond was a surety bond and, from all that
appears in the record, was sufficient in form and substance, the
determination of its sufficiency is left wholly with the judge,
who has had no opportunity to make that determination.

In construing the statute and declaring the law, we must look
to the future as well as to the facts presented to us in the
instant case, and the announcement of any other rule than that
above set out would leave the door open for the filing of mere
"straw bonds" without approval and the assumption of official
duties thereunder; and, while it may seem that an injustice
results in this case from a strict construction of the statute, it
must be remembered that the situation in which the relator
finds himself arose from his neglect of a provision of law
which he is presumed to know and to which his attention was
called when he presented his first bond to the judge. The
record does not disclose why, if relator was advised, and him-
self deemed it necessary, to present the first bond to the judge,
he did not likewise present the new bond to that officer. We
can but conclude that the relator not only neglected to file his
bond "within the time prescribed," but neglected to legally
file it at any time.

8. What, then, is the position in which we find relator?
[13] Under all of the decisions above, holding that sections
similar to our section 432 are directory only, it is held that
compliance with the requirements *before* action is taken by the
authority in whom is vested the right to declare a forfeiture,
and before other rights or title vest, is sufficient (*State ex rel.*

*Lease* v. *Turner*, above) nonaction by the proper authority amounting to a waiver of the right to declare a forfeiture (Mechem on Public Offices and Officers, above). But in the case at bar there was no waiver, there was action. On December 21, 1926, Judge Pomeroy made and entered an order declaring a vacancy in the office.

However, section 4455, Revised Codes of 1921, provides: "Each person elected or appointed to the office of county commissioner, must, before he enters upon the duties of his office, execute and file with the clerk of the district court of the county a bond, as provided in section 466 of this Code. It is the duty of the district judge on the first day in each term or session of court, in open court, to examine and inquire into the sufficiency of such bond, and order a new bond if found insufficient, and if found sufficient, his approval must be entered in the minutes of the court."

Counsel for relator interprets this section to mean that a bond of a county commissioner must be filed with the clerk of the district court regardless of approval, and that it then becomes the duty of the judge to approve the bond at the next term or session of court, which would in this instance have been in January following relator's entry upon the duties of his office, and that relator was not required to present his bond to the judge for approval before the filing.

Sections 466 to 476, inclusive, Revised Codes of 1921, have to do generally with the giving of official bonds on qualifying for county office. Section 471 provides that all such bonds must be approved by the district judge; section 473, that "the approval of every official bond must be indorsed thereon and signed by the officer approving the same"; while section 474 declares that "no officer with whom any official bond is required to be filed must file such bond until approved."

The different parts, titles, *etc.*, of the Codes are to be [14] construed together as one complete and harmonious

system (*State ex rel. Nissler* v. *Donlan,* 32 Mont. 256, 80 Pac. 244), and where one part of a statute or of the law on a subject is susceptible of two constructions, and the language of another part is clear and definite and is consistent with one of such constructions and opposed to the other, the construction must be adopted which will render all clauses harmonious (*State ex rel. Bitter Root Valley Irr. Co.* v. *District Court,* 51 Mont. 305, 152 Pac. 745.)

While sections 471, 473 and 474 appear in the Codes before section 4455, reference to the history of the enactments shows that the latter section was adopted prior to the former, and it cannot therefore be said that, by enacting section 4455, the legislature intended to modify the former provisions.

The "sufficiency of *such* bond" referred to in section 4455 relates to the bond mentioned in the first clause of the section, which is the bond which any county commissioner is required to make and file before entering upon the duties of his office; the statute therefore requires the district judge to examine this bond, thus mentioned in the singular, "on the first day in each term or session of court," while the previous sections require the approval of all bonds before filing and, therefore, before the officers mentioned enter upon the duties of their offices.

Thus analyzing the provisions on the same subject and keeping in mind the rules of construction referred to above, there is no inconsistency in the statutes and their meaning is plain. Sections 471, 473 and 474 provide what must be done initially by every county officer-elect and by the district judge with reference thereto, and section 4455 imposes the additional duty upon the judge of examining each bond filed pursuant to the provisions of the former requirements at each term of court, in order to determine whether such bond, though originally sufficient, has in any manner become insufficient after its original sufficiency was determined.

.The initial examination and approval may be made in chambers and must be indorsed on the bond; the subsequent examinations and approvals must be made in open court and entered on the minutes of the court. The procedure followed as to the first bond was proper; that as to the new bond was not.

Section 4454, Revised Codes of 1921, declares that "whenever [15] a vacancy occurs in the board of county commissioners from a failure to elect or otherwise, the district judge * * * must fill the vacancy," *etc.* Section 511, *Id.,* provides that "an office becomes vacant on the happening of either of the following events before the expiration of the term of the incumbent," the death, resignation, removal, *etc.,* of the officer, and: "9. His refusal or neglect to file his official oath or bond within the time prescribed." While the phraseology of the latter section is apt in its application to vacancies occurring through death, resignation, *etc.,* of an incumbent, it is not so when applied to the refusal or neglect of an officer-elect to file his oath and bond, as "vacant" means "not filled by an occupant or incumbent" (Webster's New International Dictionary), and the happening of such an event occurs while there is still an incumbent in the office and not during the term of the officer whose office is said to become vacant. However, it was clearly the intention of the legislature, in coupling this ground with the others enumerated, to declare that such refusal or neglect should have the same effect upon the right of the officer-elect to hold the office as does the happening of those events which, in fact, "vacate" the office.

As courts are required to construe statutory provisions in accordance with the legislative intent, it is held that the word "vacancy," as used in such statutes, is not to be considered in its literal sense, it is ordinarily given a more liberal figurative meaning conforming to the intention of the lawmaker and the purpose to be accomplished (*State* v. *Young,* 137 La. 102, 68

South. 241); that "within the meaning" of a statute identical with ours, such officer-elect is to be considered an "incumbent" of the office to which he has been elected (*People* v. *Taylor,* 57 Cal. 620; *Campbell* v. *Board of Supervisors,* 7 Cal. App. 155, 93 Pac. 1061); and, while the statute is not self-executing, the declaration of the proper authority, after the expiration of the statutory period and before qualification by the officer-elect, creates a "vacancy" in the office on the commencement of the term to which such officer is elected (*People* v. *Taylor,* above; *Ballantyne* v. *Bower,* 17 Wyo. 356, 17 Ann. Cas. 82, 99 Pac. 869; *State ex rel. Lemonnier* v. *Beard,* 34 La. Ann. 273; *In re Executive Communication,* 25 Fla. 426, 5 South. 613). If, then, a vacancy is bound to occur at the commencement of the new term, in the absence of any law forbidding it, the judge may make a prospective appointment to fill the anticipated vacancy which will vest the title to the office in the appointee on qualifying and assuming the duties of the office at the commencement of the term. (*State* v. *O'Leary,* 64 Minn. 207, 66 N. W. 264; *State* v. *Irwin,* 5 Nev. 111; *State ex rel. Whitney* v. *Van Buskirk,* 40 N. J. L. 463; *State ex rel. Haight* v. *Love,* 39 N. J. L. 14.)

In *State ex rel. Buckner* v. *Mayor of Butte,* 41 Mont. 377, 109 Pac. 710, it is held that a newly created office becomes *ipso facto* "vacant" on its creation; and in *State ex rel. Bennetts* v. *Duncan,* 47 Mont. 447, 133 Pac. 109, this court had under consideration a provision respecting officers of cities and towns which declared that: "If anyone, either elected or appointed to office, fails for ten days to qualify as required by law, * * * such office becomes vacant." Mr. Chief Justice Brantly, speaking for the court, said: "Giving to section 3234, *supra,* the force and effect which the legislature evidently intended it should have, we think that it should be construed to mean that the failure of the person elected or appointed to

office to qualify within the time prescribed creates a vacancy in the office which may be filled by the appointing power.''

The only decision which we have found giving to such a statute a contrary construction is *State ex rel. Vanderveer* v. *Gormley,* 53 Wash. 543, 102 Pac. 435, wherein it is held that, as there are statutory provisions for the requirement from an ''incumbent'' of new or additional bonds, the statute declaring a vacancy on account of refusal or neglect to file an oath or bond refers to those cases only where an officer has been ordered to file a new or supplemental bond within a time certain and has failed to do so. This holding seems to us to place a strained construction upon the statute and to ignore the plain intention of the legislature.

If any effect whatever is to be given to the provisions of section 511 above, in cases such as this—and it is our duty to give effect to every statute when possible to do so—it must be that thereunder the appointing power is given authority by the statute to declare the office forfeited for failure to file the oath and bond at any time after the expiration of the thirty-day period provided, which declaration is, in effect, a determination that a vacancy will occur in the office with the beginning of the term to which such officer was elected, and that such authority may make a prospective appointment to fill such vacancy when it does occur.

It is therefore adjudged that the complaint be and the same is hereby dismissed.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS and GALEN concur.

MR. JUSTICE STARK, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied March 8, 1927.